OPINION
{¶ 1} Appellants, Danny Westlake ("Danny") and Jake Westlake ("Jake") (collectively, "appellants"), appeal from the judgment of the Franklin County Court of Common Pleas, which affirmed the July 31, 2007 orders of appellee, Ohio Department of Agriculture ("the Department"), disqualifying a lamb that Jake exhibited at the 2006 Union County Fair, ordering forfeiture of all awards, prizes, premiums, and proceeds earned for that lamb, and suspending Danny from all livestock exhibitions in the state of Ohio for two years. For the following reasons, we affirm.
 {¶ 2} This action stems from allegations by Aaron Wilson ("Wilson") regarding events that occurred on July 25, 2006, at the Union County Fair, where Wilson, then 13 years old, and Jake were exhibiting lambs. Wilson claims that, shortly after 10 p.m. on that date, he observed Danny, Jake's father, drench a lamb that Jake was exhibiting at the fair. Drenching a lamb involves the insertion of liquid into the animal, often through a tube or hose placed down the animal's throat. Drenching of exhibited lambs is expressly prohibited by Ohio Adm. Code 01-19-13(H), except when performed at the direction of a licensed veterinarian, and constitutes the inhumane treatment of livestock under Ohio Adm. Code 901-19-11, and tampering with livestock under R.C. 901.76. Although Danny denied drenching the lamb, the Department conducted an investigation, after which, on December 12, 2006, it issued notices of proposed disciplinary action to appellants pursuant to R.C. 901.74.[1]
As to Jake, the *Page 3 
Department proposed to disqualify his Market Wether Lamb from the 2006 Union County Fair and to require forfeiture of all awards, prizes, premiums or proceeds won for that lamb, based on violations of R.C. 901.76 and Ohio Adm. Code 901-19-11 and 901-19-13. The Department also proposed to ban Danny from participation in Ohio livestock exhibitions for two years for these violations.
 {¶ 3} At appellants' request, the Department held a hearing before a hearing officer on February 27, and April 25, 2007. Over the course of the two-day hearing, the Department presented testimony from Wilson, Dr. Margaret Masterson, the fair veterinarian, John Eagon, the Department's investigator, and Tony Forshey, D.V.M., the Department's Chief of Animal Industry, State Veterinarian. In their defense, appellants testified and called 12 other witnesses. On June 25, 2007, the hearing officer issued a written report and recommendation, approving the Department's proposed disciplinary action. A July 2, 2007 supplement clarified the hearing officer's recommendations. Appellants filed timely objections to the hearing officer's report and recommendation.
 {¶ 4} On July 31, 2007, the Director issued Orders No. 2007-281 and 2007-282, overruling appellants' objections, adopting the hearing officer's report and recommendation and supplement, and making additional findings. In Order No. 2007-281, the Director ordered disqualification of the lamb that Jake exhibited at the 2006 Union County Fair and forfeiture of all awards, prizes, premiums, and proceeds earned from that lamb. In Order No. 2007-282, the Director suspended Danny from all livestock exhibitions in the state of Ohio for two years.
 {¶ 5} Appellants each timely appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. Having sua sponte consolidated appellants' appeals, *Page 4 
the trial court issued a single decision and entry affirming the Director's orders on December 31, 2007. Appellants have now appealed to this court, and, like the trial court, we have consolidated their appeals.
 {¶ 6} Appellants assert four assignments of error for our review:
 Assignment of Error I
 THE REVIEWING COURT ERRED AS A MATTER OF LAW IN FINDING A HEARSAY STATEMENT OF A WITNESS WHO TESTIFIED AT THE ADMINISTRATIVE HEARING CONTRARY TO HIS PRIOR WRITTEN STATEMENT TO BE RELIABLE EVIDENCE.
 Assignment of Error II
 THE REVIEWING COURT ABUSED ITS DISCRETION IN AFFIRMING THE ORDERS OF THE DIRECTOR OF [THE DEPARTMENT] BY FAILING TO EMPLOY THE PROPER STANDARD OF REVIEW OF THE EVIDENCE[.]
 Assignment of Error III
 THE CONSIDERATION OF HEARSAY EVIDENCE BY THE DIRECTOR OF [THE DEPARTMENT] AND THE * * * REVIEWING COURT IN AFFIRMING THE ORDERS OF THE DIRECTOR WAS FUNDAMENTALLY UNFAIR AND DENIED APPELLANTS DUE PROCESS OF LAW
 Assignment of Error IV
 THE CUMULATIVE ERRORS OF THE REVIEWING COURT DENIED APPELLANTS FUNDAMENTAL FAIRNESS AND DUE PROCESS OF LAW AS [GUARANTEED] UNDER THE CONSTITUTIONS OF THE UNITED [STATES] AND THE [STATE] OF OHIO[.]
 {¶ 7} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence and is in accordance with the law. In applying this standard, the *Page 5 
court must "give due deference to the administrative resolution of evidentiary conflicts." Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111.
 {¶ 8} The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:
 * * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
(Footnotes omitted.) Our Place, Inc. v. Ohio Liquor Control Comm.
(1992), 63 Ohio St.3d 570, 571.
 {¶ 9} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Rossford Exempted Village School Dist. Bd.of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the agency's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med. Bd. (1992),80 Ohio App.3d 675, 680. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Whether this court might have arrived at a different conclusion than the administrative agency is immaterial. An appellate court may not substitute its judgment for an administrative agency absent the approved criteria for doing so. Lorain City Bd. ofEdn. v. State Emp. Relations Bd. (1988), *Page 6 40 Ohio St.3d 257, 261. However, on the question whether the agency's order was in accordance with the law, this court's review is plenary. Univ. Hosp.,Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343.
 {¶ 10} Because it concerns the trial court's standard of review, we begin with appellants' second assignment of error. The trial court stated the correct standard of review and noted both its duty to give due deference to the administrative resolution of evidentiary conflicts and its duty to "`appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight therof.'" Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews v. Bd. of Liquor Control (1955), 164 Ohio St. 275, 280. Nevertheless, appellants contend that the trial court failed to appraise the credibility of the witnesses, the probative character of the evidence, and the weight thereof, and thus abused its discretion by not employing the stated standard.
 {¶ 11} After independently reviewing the hearing transcript and evidence, and upon concluding that Dr. Masterson's and Wilson's testimony constituted reliable, probative, and substantial evidence in support of the Director's orders, the trial court stated: "To hold otherwise would require this Court to conduct a de novo review of the evidence and independently address the credibility of each witness. Clearly, that would not be appropriate." Based on that statement, appellants argue that the trial court abrogated its duty to evaluate the credibility of the testimony presented at the hearing. We disagree.
 {¶ 12} The trial court's decision shows consideration of not only the substance of the evidence presented to the hearing officer, but also the credibility and weight of that *Page 7 
evidence. The trial court acknowledged appellants' arguments and evidence regarding Wilson's credibility, based on such factors as Wilson's age, alleged bias, and ability to see and understand the facts he testified about. The court included in its decision the hearing officer's recitation of conflicting testimony regarding the events of July 25, 2006, as offered by Wilson and Danny. The court also noted appellants' attempt to attack Wilson's credibility by establishing bias, based on jealousy and suspicions that Danny drenched lambs at the prior Union County Fair. In apparently assigning little weight to the testimony regarding Wilson's bias by appellants' witnesses, many of whom were appellants' relatives, the trial court stated, "the bias arguments they assert against the Department's witnesses [exist] in regard to the testimony from relatives of the Appellants." The trial court also acknowledged conflicting evidence regarding potential causes for the lambs' condition and the manner in which the lambs were attached to the fence. The trial court characterized appellants' voluminous evidence on that point as cumulative and assigned it little weight, aptly recognizing that the Department did not dispute either that the lambs were in distress or that something other than drenching could have explained the lambs' position and condition. Thus, the trial court's decision demonstrates that the court engaged in, at least, a limited evaluation of the credibility of the evidence, as required in an R.C. 119.12 appeal.
 {¶ 13} As appellants recognize, an appeal under R.C. 119.12 does not entail a de novo review. See Conrad at 110-111. A hearing de novo would require the reviewing court to decide the matter anew, giving no deference to a lower court's findings, as if the original hearing had not taken place. See Black's Law Dictionary (7th Ed. 1999) 725. In contrast, a common pleas court's review of an administrative order in *Page 8 
an R.C. 119.12 appeal involves some deference to the trier of fact's determinations where the record contains conflicting evidence. Although the trial court must necessarily weigh the evidence presented to the administrative agency and, to a limited extent, may re-evaluate the credibility of the evidence, it must give due deference to the administrative determination of conflicting testimony, including the resolution of credibility conflicts. Crumpler v. State Bd. of Edn.
(1991), 71 Ohio App.3d 526, 528, citing Conrad; Myers v. ColumbusDevelopmental Ctr. (Sept. 13, 1988), Franklin App. No. 88AP-497, citingConrad at 111 ("[i]t is elementary that in reviewing an order pursuant to R.C. 119.12, the common pleas court should normally defer to the determination of the administrative agency as to the weight to be given the evidence and the credibility of the witnesses"); Slorp v. Dept. ofAdm. Servs. (Apr. 30, 1998), Franklin App. No. 97APE08-1136, citingConrad. See, also, Linden Med. Pharmacy v. Ohio State Bd. ofPharmacy, Franklin App. No. 02AP-1233, 2003-Ohio-6650, ¶ 13 ("[b]ecause we must defer to the Board's assessment of the credibility of the witnesses, we conclude that reliable, probative and substantial evidence supports the Board's finding").
 {¶ 14} Here, the testimony before the hearing officer included conflicting evidence of the events underlying this action and also of facts going to the witnesses' credibility. As such, absent a legally sufficient reason for not doing so, the court was required to defer to the agency's factual findings and credibility determinations. After noting conflicting evidence regarding the credibility of the witnesses, the trial court concluded, as follows:
 The hearing officer found the testimony and evidence advanced by the Department to be credible. The hearing *Page 9 
officer has had the opportunity to observe the demeanor of the witnesses and weigh their credibility. This Court will give the fact finder the deference that is required. There did exist reliable, probative and substantial evidence to support the hearing officer's "Report and Recommendation."
The trial court applied the appropriate standard of review. Accordingly, we overrule appellants' second assignment of error.
 {¶ 15} We now turn to the first assignment of error, by which appellants contend that the trial court erred as a matter of law in concluding that Wilson's prior statements to Eagon, statements that partially contradicted his sworn testimony, constituted reliable evidence. To address this assignment of error, we briefly examine the content of Wilson's sworn testimony and prior statements.
 {¶ 16} As part of his investigation, Eagon interviewed Wilson on July 27, 2006, less than 48 hours after the alleged drenching, at which time Wilson provided him with a written statement dated July 26, 2006. Wilson's written statement, which was attached to Eagon's investigative report and admitted over objections by appellants' counsel, provides, in part, as follows:
 * * * After that I seen Danny move his truck over to the lamb that was tied to the fence. Danny got in the back of his truck and got the [tube] out of the bed of his truck. When he stuck the [tube] down the lambs [throat] I [thought] it was going to die. He drenched it real fast. After that Jake W. walked that lamb back to the barn and he had the [tube] and Jake put it in Miles Dawsons[2]
car and they all left so there was no evidence.
Eagon testified about his interview of Wilson, as follows:
 * * * He described [Danny] then went to his truck, moved his truck to the immediate area where the lambs were secured to the fence. *Page 10 
 * * * [H]e then observed [Danny] remove something from the back of the truck. He did state that it was a drench tube.
 * * *
 * * * He told us that he observed [Danny] stick the tube down the lamb's throat. His description was that he thought the lamb was going to die, observing his reaction from — observing the reaction from the act, at which time he said it happened very quickly. Aaron said it happened very quickly, at which time Jake then took the drenching tube, and he took it to a vehicle described as a dark gray Mitsubishi. Aaron was able to identify the owner and the driver of that vehicle as Miles Dawson. And he indicated that at that time the tube, the instrument, was put in the car; and Miles Dawson, along with other people in the vehicle, left the fairgrounds.
(Tr. 141-142.)
 {¶ 17} In certain key respects, Wilson's hearing testimony differed from his prior statements. Consistent with his prior statements, Wilson testified as follows:
 * * * And I seen Danny get in his truck and move over by the fence. And the lamb was tied up over there, and that's when I seen him stick the tube down the lamb and drench him. And then the lamb started hanging on the fence, and that's when I freaked out and I left.
(Tr. 19.) Although he testified that he saw Danny get a tube from his truck and insert it down the lamb's throat, Wilson was unable to see Danny force any liquid into the lamb. Wilson testified that, in reaction to having the tube placed down its throat, the lamb "kind of dropped and laid on the ground," at which time Wilson "freaked out" and "just left and looked for my dad." (Tr. at 24.) Contrary to his prior statements, Wilson testified that Danny was alone when the drenching occurred, that he did not see Jake do anything with the drenching tube, and that he did not know what ultimately happened to the tube. Of particular importance to this appeal are Wilson's prior written and oral statements *Page 11 
that Jake placed the drenching tube into Miles Dawson's vehicle, which would explain the absence of a drenching tube at the scene.
 {¶ 18} At the hearing, Wilson testified before Eagon, and he admitted making a written statement and speaking to Eagon within a couple days after the incident. Appellants' counsel questioned Wilson about portions of his prior statements, but neither party confronted Wilson with the inconsistency between his live testimony and prior statements or gave him an opportunity to explain that inconsistency. Appellants' counsel objected to Eagon's testimony regarding Wilson's prior statements and to the admission of Wilson's written statement as hearsay and as an inappropriate attempt by the Department to impeach its own witness, [3]
but the hearing examiner overruled appellants' objections. The Director expressly found that Wilson's prior written statement was reliable, probative, and substantial evidence because it was made within 48 hours of the incident.
 {¶ 19} Appellants concede that administrative agencies are, generally, not bound by the strict rules of evidence applied in court. SeeHaley v. Ohio State Dental Bd. (1982), 7 Ohio App.3d 1, 6. Thus, hearsay is not precluded in administrative hearings. Black v. State Bd. ofPsychology, 160 Ohio App.3d 91, 2005-Ohio-1449, ¶ 17. However, while the hearsay rule is relaxed, the discretion to consider hearsay evidence may not be exercised in an arbitrary manner. Haley at 6; Holzhauser v. StateMed. Bd. of Ohio, Franklin App. No. 06AP-1031, 2007-Ohio-5003. The Supreme Court of Ohio has recognized that "evidence which might constitute inadmissible hearsay where stringent *Page 12 
rules of evidence are followed must be taken into account in proceedings * * * where relaxed rules of evidence are applied." Simon v. Lake GeaugaPrinting Co. (1982), 69 Ohio St.2d 41, 44. This court has held that hearsay evidence may be considered in administrative proceedings where the statement is not inherently unreliable and constitutes substantial, reliable, and probative evidence. Doersam v. City of Gahanna (Sept. 30, 1997), Franklin App. No. 96APF12-1766, citing In re Petition forAnnexation of 162.631 Acres (1988), 52 Ohio App.3d 8.
 {¶ 20} The trial court held that the hearing officer did not abuse his discretion in admitting Wilson's prior statement and that neither the hearing officer nor the Director acted arbitrarily in relying on that statement. The trial court found nothing in the record to indicate that the statement was inherently unreliable and found that the hearing officer would have been justified in admitting the statement pursuant to the hearsay exceptions specified in Evid. R. 803(1) or (5). To the contrary, appellants argue that admission of Wilson's prior statement was arbitrary and unreasonable, that Wilson's prior statement is inherently unreliable based on inconsistencies between it and his live testimony, and that the trial court erred as a matter of law in allowing consideration of that evidence. Ultimately, we need not decide whether consideration of Wilson's prior statement, regarding Jake's disposal of the drenching tube, was arbitrary because, even without that statement, the record contains reliable, probative, and substantial evidence supporting the Director's orders.
 {¶ 21} Wilson testified that he observed Danny remove a drenching tube from his truck and place it down the lamb's throat, that he was close enough to see Danny's actions, and that there was sufficient light for him to clearly see Danny putting the tube *Page 13 
down the lamb's throat. Although Wilson was unable to describe the tube at the hearing, he was sure he could see the object in Danny's hand. Wilson also described the lamb's reaction to the alleged drenching. Specifically, he testified that, after Danny put the tube in the lamb's throat, the lamb "kind of dropped and laid on the ground." (Tr. 24.) Although appellants have suggested that Wilson simply mistook the halter and lead restraining the lamb for a drenching tube, that suggestion does not explain Wilson's testimony that he saw the drenching tube in Danny's hand while the lamb was already tethered to the fence or his testimony regarding the lamb's reaction.
 {¶ 22} Dr. Masterson testified that, shortly after the alleged drenching, she observed two lambs tied to the fence with their heads very extended in the air with only about two inches of lead rope space. According to Dr. Masterson, the lambs were "very, very stressed" and were struggling, breathing rapidly, and frothing and foaming at the mouth. (Tr. 58.) One lamb was also coughing. She further stated that it looked like the lambs were choking or trying to swallow something. Dr. Masterson testified that the lambs' condition was consistent with the response of lambs having been drenched and that the way the lambs were attached to the fence was consistent with trying to immobilize the animals for drenching. Regarding Danny's explanation that he and Jake were cooling the lambs at the time of the alleged drenching, Dr. Masterson testified that the way the lambs were attached to the fence was inconsistent with cooling the lambs and would, in fact, be counterproductive to that goal. Despite evidence that neither the observed condition of the lambs nor the manner in which the lambs were attached to the fence conclusively demonstrated that drenching had occurred, neither Dr. Masterson nor the Department contended otherwise. Nevertheless, Dr. Masterson *Page 14 
testified that the observed condition of the lambs was consistent with the lambs having been drenched. The hearing officer rejected any suggestion of bias by Dr. Masterson, calling the evidence of such bias "incredible." The trial court concluded that Dr. Masterson's testimony provided reliable, probative, and substantial evidence in support of the Director's order, especially when coupled with Wilson's testimony, and we find no abuse of discretion in that conclusion.
 {¶ 23} Appellants correctly argue that the record contained evidence, separate from the inconsistencies between Wilson's live testimony and prior statements, calling into question the credibility of Wilson's testimony. For example, Drs. Masterson and Forshey testified that drenching a lamb with a tube would take between 30 seconds and a minute, whereas Wilson admitted telling Eagon that the drenching occurred so quickly that, had he turned his head, he would have missed it. Wilson also admitted that he believed Danny had been drenching sheep all week and that he expected to catch him doing so the night of the alleged drenching. While the evidence was conflicting, the hearing officer, who had the opportunity to observe the demeanor of the witnesses, believed Wilson's testimony. In weighing the credibility and weight of Wilson's testimony, the hearing officer found that Wilson "was fairly clear as to what he saw, had ample opportunity to observe, and had apparently sufficient lighting to observe." The trial court did not abuse its discretion in giving due deference to the hearing officer's findings and credibility determinations with respect to the conflicting testimony. See Delahoussaye v. Ohio State Racing Comm., Franklin App. No. 03AP-954,2004-Ohio-3388, ¶ 22. That we may have arrived at a different conclusion than the hearing officer is immaterial. Accordingly, even disregarding Wilson's prior statements regarding the *Page 15 
disposition of the drenching tube, we conclude that the trial court did not abuse its discretion in concluding that the Director's order was supported by reliable, probative, and substantial evidence and was in accordance with the law. Therefore, we overrule appellants' first assignment of error.
 {¶ 24} Because appellants' third assignment of error is based entirely upon consideration of Wilson's prior hearsay statement that, in light of our prior discussion, if error, was harmless, we overrule that assignment of error.
 {¶ 25} By their fourth and final assignment of error, appellants argue that the cumulative errors of the trial court denied appellants fundamental fairness and due process of law. The cumulative error doctrine holds that a judgment may be reversed if the cumulative effect of multiple errors deprives a defendant of his constitutional rights even though, individually, the errors may not rise to the level of prejudicial error or cause for reversal. State v. Garner,74 Ohio St.3d 49, 64, 1995-Ohio-168. In Ohio, the cumulative error doctrine is not typically employed in a civil context. Sykes v. Gen. Motors Corp., Trumbull App. No. 2003-T-0007, 2003-Ohio-7217, ¶ 39. Nevertheless, we briefly address appellants' arguments regarding other errors by the trial court.
 {¶ 26} In addition to alleged errors addressed in appellants' previous assignments of error, appellants contend that the trial court abused its discretion by deferring to the hearing officer's findings where the hearing officer erred in excluding, as hearsay, the testimony of Russell Arnold ("Arnold"), a cousin of Wilson's father. The hearing examiner sustained the Department's objection to Arnold's testimony regarding a conversation between Arnold and Wilson's father, Brian, on July 25, 2007, but permitted appellants to preserve Arnold's testimony as an offer of proof. Arnold testified *Page 16 
that Brian told him, "they're all waiting in the barn and watching for [appellants]" and that "they [were] going to get [Danny] tonight" because they suspected him of doing something illegal. (Tr. 201.) Arnold claimed that he immediately called Danny's brother and asked him to tell Danny to stay out of the barn "because they're watching for him." (Tr. 202.)
 {¶ 27} Appellants contend that Arnold's testimony was not hearsay because it was not offered for the truth of the matter asserted, but to show Wilson's bias, prejudice, and motive to misrepresent, caused by the influence of his father and others. First, the record contains no evidence of Brian's influence over Wilson from which to adduce bias by Wilson. Moreover, even were we to conclude that Arnold's testimony could have been admitted as evidence of Wilson's bias or motive to misrepresent, we find no prejudice as a result of the hearing officer's exclusion of the testimony. In his hearing testimony, Wilson admitted his belief that Danny had been drenching sheep all week and testified that he was watching Danny with the expectation that he would catch him drenching a lamb. Thus, evidence of bias from suspicions that appellants were drenching lambs and the expectation of catching Danny that evening was already part of the record, from Wilson's own testimony. Accordingly, Arnold's testimony would have been cumulative, and no prejudice resulted from the hearing officer's exclusion of that testimony. See Kovach v. Newbury Industries, Inc. (Dec. 9, 1983), Geauga App. No. 1105 (stating that an error in the exclusion of cumulative evidence was harmless).
 {¶ 28} Finally, appellants contend that the trial court erred by agreeing with the hearing officer's refusal to consider evidence of motive. Specifically, appellants maintain that, because there is no competitive benefit to drenching an exhibition lamb, *Page 17 
Danny had no motive for doing so. Thus, appellants argue that the hearing officer should have considered Danny's supposed lack of motive as circumstantial evidence that the drenching did not occur. We disagree. Despite appellants' assertion that there is no advantage to drenching an exhibition lamb, Wilson testified that he believed appellants were drenching sheep to obtain an advantage at the fair. Dr. Masterson testified: "It's my understanding that the purpose of drenching sheep at exhibitions is to somehow cheat and give those animals an unfair advantage over the other animals in the show." (Tr. 64.) In light of conflicting testimony regarding the advantages of drenching exhibition lambs, we find no abuse of discretion in either the hearing officer's refusal to consider lack of motive as circumstantial evidence that the drenching did not occur or in the trial court's approval of that refusal.
 {¶ 29} Having found no error with respect to the exclusion of Arnold's testimony or the refusal to consider circumstantial evidence regarding the lack of motive, and in light of our discussion of appellants' previous assignments of error, we find that the cumulative error doctrine, even if applicable in an R.C. 119.12 appeal, does not require reversal here. Accordingly, we overrule appellants' fourth assignment of error.
 {¶ 30} In conclusion, we overrule each of appellants' assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BRYANT and KLATT, JJ., concur.
[1] R.C. 901.74(A) provides that "[a]ny person involved in any activity in connection with exhibiting livestock at an exhibition * * * is subject to disciplinary action" by the Department for specified reasons. Under R.C. 901.74(B), the Director of the Department (the "Director") may conduct an adjudication in accordance with R.C. Chapter 119 when one or more of the specified grounds for discipline exist and may take disciplinary action in accordance with rules adopted in accordance with Chapter 119.
[2] Miles Dawson is Danny's nephew and Jake's cousin.
[3] Evid. R. 607(A) provides, in part, that "the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage" unless the prior statement was admitted pursuant to specified hearsay exclusions or exceptions. *Page 1