[Cite as *Jenkins v. Grawe*, 2019-Ohio-2013.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mary Jenkins, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 16AP-804 |
| v. | : | (C.P.C. No. 14CV-4013) |
| Katharine Roxanne Grawe, M.D., et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

## D E C I S I O N

### Rendered on May 23, 2019

**On brief:** *Colley Shroyer & Abraham Co. LPA*, and *David I. Shroyer*, for appellee. **Argued:** *David I. Shroyer.*

**On brief:** *Hanna, Campbell & Powell, LLP,* and *Douglas G. Leak*; *Poling Law, Brant E. Poling,* and *Sabrina S. Sellers*, for appellants. **Argued:** *Douglas G. Leak.*

APPEAL from the Franklin County Court of Common Pleas

PER CURIAM.

{¶ 1} In this medical malpractice case, defendants-appellants, Katharine Roxanne Grawe, M.D., and Roxy Plastic Surgery, LLC, appeal from the verdict entered in favor of plaintiff-appellee, Mary Jenkins, after a jury trial in the Franklin County Court of Common Pleas. For the reasons set forth below, we affirm.

## I. Facts and Procedural Background

{¶ 2} Jenkins was diagnosed with breast cancer in 2006 and had her right breast removed in a mastectomy. In 2012, she attended a presentation by Dr. Grawe on several different methods of breast reconstruction. Dr. Grawe approached Jenkins afterwards and the two discussed breast reconstruction surgery. Jenkins agreed to have a transverse rectus

abdominis myocutaneous ("TRAM") flap procedure, and it was scheduled for October 22, 2012, at Mount Carmel St. Ann's Hospital.

{¶ 3} A TRAM flap procedure fashions the reconstructed breast from a piece of the patient's abdominal muscle. Jenkins agreed to a pedicle TRAM flap, which involves cutting half of the abdominal muscle and bringing it up to the patient's chest under the skin to reconstruct the breast. The surgeon leaves one vein and one artery attached to maintain blood flow to the abdominal flap. A free flap procedure, which was not performed on Jenkins, requires a complete disconnection of the abdominal flap and the use of microsurgery to reattach the veins and arteries, thereby reconnecting the blood supply to the flap.

{¶ 4} During the initial consultation, Dr. Grawe gave Jenkins the option of first undergoing another procedure, deep inferior epigastric artery ligation ("DIEA"), in order to lessen the risk of partial or fat necrosis occurring after the TRAM flap procedure. Dr. Grawe told Jenkins that a DIEA was elective and that the complications it prevented only arose in 2 to 5 percent of cases. Performing a DIEA would have delayed the breast reconstruction and Jenkins chose not to have the procedure.

{¶ 5} Dr. Grawe performed the surgery on the morning of October 22, 2012. Jenkins woke up from it and was initially "happy" with the results. (Tr. Vol. III at 666.) However, sometime between 10:00 p.m. and 11:00 p.m. the next day, Jenkins noticed the breast tissue had "started to swell" and was "turning purplish" in color. (Tr. Vol. III at 613.) A nurse contacted Dr. Grawe, who ordered that leeches be applied to Jenkins' breast.

{¶ 6} Dr. Grawe examined Jenkins at approximately 8:30 a.m. the next morning. There was no change to the condition of the breast, and the leech therapy was continued. Shortly before noon, nurses noted that Jenkins' breast had become cool and called Dr. Grawe. After examining Jenkins, Dr. Grawe took her back into surgery. Dr. Grawe reopened the TRAM flap, removed non-viable tissue, and reset the pedicle, which appeared to restore the blood supply to the breast.

{¶ 7} Because staying at the hospital carried an infection risk, Dr. Grawe recommended that Jenkins go to a nursing home for wound care. Jenkins was discharged from the hospital on November 3, 2012. After Jenkins realized that there was no way that the flap could be salvaged, she met with Dr. Grawe on November 12. The tissue was

removed the next morning during an outpatient procedure at the hospital, after which Jenkins returned to the nursing home. She spent a total of four months in the nursing home undergoing wound therapy. The wound did not completely close until midsummer 2013.

{¶ 8} Jenkins filed suit on April 11, 2014, alleging that Dr. Grawe was negligent in deciding to perform only the leech therapy and not timely operating on her TRAM flap after the venous congestion had occurred. At a jury trial, which began on April 11, 2016, Jenkins presented her own testimony as well as that of an expert witness, Wong S. Moon, M.D. Dr. Grawe testified for the defense and called as expert witnesses Joseph M. Serletti, M.D., and David E. Halpern, M.D.

{¶ 9} The jury returned a verdict in Jenkins' favor in the amount of $300,000.00 in non-economic damages and $58,620.74 in economic damages. The trial court reduced the non-economic damages award to $250,000.00 and entered final judgment in the amount of $308,620.74.

{¶ 10} Appellants timely appeal.

## II. Assignments of Error

{¶ 11} Appellants assert the following assignments of error:

> [1.] THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING DEFENDANTS' PROXIMATE CAUSE DEFENSE.
>
> [2.] THE TRIAL COURT ABUSED ITS DISCRETION IN EXCLUDING EVIDENCE AND TESTIMONY ABOUT THE RISKS AND COMPLICATIONS ASSOCIATED WITH THE SURGERY AT ISSUE.
>
> [3.] THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING PLAINTIFF'S EXPERT TO OFFER NEW EXPERT OPINIONS NOT PREVIOUSLY DISCLOSED.
>
> [4.] THE TRIAL COURT ABUSED ITS DISCRETION IN DISMISSING TWO JURORS DURING VOIR DIRE WITHOUT ANY GOOD CAUSE.
>
> [5.] THE TRIAL COURT ERRONEOUSLY AND PREJUDICIALLY MADE IMPROPER COMMENTS TO THE JURY WHEN RESPONDING TO THE JURORS' QUESTIONS DURING DELIBERATIONS.

[6.] THE TRIAL COURT ERRED IN ENTERING JUDGMENT IN FAVOR OF PLAINTIFF WHERE THE JURY'S ANSWERS TO THE NARRATIVE JURY INTERROGATORY WERE NOT SUPPORTED BY THE EVIDENCE/TESTIMONY PRESENTED AT TRIAL.

[7.] THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING TRIAL TESTIMONY AND THE ADMISSION OF EVIDENCE OF PLAINTIFF'S MEDICAL BILLS.

[8.] THE CUMULATIVE EFFECT OF THE TRIAL COURT'S ERRORS DENIED DEFENDANTS A FAIR TRIAL.

## III. Discussion

### A. First Assignment of Error

{¶ 12} In their first assignment of error, appellants assert that the trial court erred by excluding their "proximate cause defense." They argue they had "an unconditional right" to have their expert witnesses opine that if Jenkins had agreed to the DIEA procedure, the TRAM flap would not have failed. (Appellants' Brief at 32.) Thus, they contend it was prejudicial to their defense for the trial court to exclude evidence and testimony on the effect of Jenkins' decision to decline the preliminary DIEA procedure.

{¶ 13} Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299 (1992). An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} In its ruling on this issue, the trial court stated:

The issue in this case is not whether the plaintiff was properly advised of the preoperative procedure to increase blood flow in and out of the implant and the risk involved at that point. The issue is was [Dr. Grawe] negligent in failing to promptly perform the microsurgery. That is the claim in this case. That is the only claim of negligence. Therefore, any testimony or evidence concerning the failure to take this discretionary procedure prior to the implant is totally irrelevant to this case.

(Tr. Vol. IV at 802.)

{¶ 15} Because the trial court excluded evidence of Jenkins' decision not to have the DIEA procedure as irrelevant, appellants' assertion that the ruling was erroneous is premised on that decision being relevant to her negligence claim. More specifically, appellants argue that Jenkins' decision to forgo the DIEA procedure was relevant to proximate cause. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

{¶ 16} "It is well settled that in order for a person to be entitled to recover in damages for a claimed negligent injury, the act complained of must be the direct and proximate cause of the injury." *Strother v. Hutchinson*, 67 Ohio St.2d 282, 286 (1981). "The rule of proximate cause 'requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act.' " *Jeffers v. Olexo*, 43 Ohio St.3d 140, 143 (1989), quoting *Ross v. Nutt*, 177 Ohio St. 113, 114 (1964).

{¶ 17} Jenkins' claim alleged that the proximate cause of her injury was Dr. Grawe's failure to promptly have microsurgery performed once the complication of venous congestion occurred. The theory of this claim, which the jury accepted, was that the failure of the TRAM flap was the natural and probable consequence of Dr. Grawe's decision to prescribe leech therapy instead of a timely microsurgery procedure, and that Jenkins' resulting injury should have been foreseen by Dr. Grawe as the likely consequence of this course of action. Jenkins' decision to forgo the DIEA procedure occurred weeks before the temporal sequence of events that proximately caused her injury, which began to manifest itself the day after Dr. Grawe performed the initial breast reconstruction surgery. Thus, Jenkins' decision was not a fact that was of consequence to the determination of proximate cause, and was irrelevant to her claim.

{¶ 18} Appellants rely on *Cox v. MetroHealth Med. Ctr. Bd. of Trustees*, 8th Dist. No. 96848, 2012-Ohio-2383, ¶ 34, in which the Eighth District Court of Appeals held that a trial court erroneously excluded the plaintiffs' expert from testifying that back blows administered by a nurse's aide had proximately caused an infant's brain injury. At the beginning of trial, the plaintiffs and the defendant hospital both listed one of the treating

physicians as an expert witness. The trial court limited the scope of the physician's direct testimony. The hospital called a different physician expert who testified that the back blows could not have caused the brain injury and subsequently withdrew the treating physician, who would have testified to the contrary, as a witness. The Eighth District described this as "clever trial strategy" that had the effect of handicapping the plaintiffs' case, but held that it was error not to allow the plaintiffs' expert to testify to the contrary in order to rebut the hospital's position. *Id.* at ¶ 25, 34.

{¶ 19} *Cox* does not apply in this case, where appellants had the opportunity to present expert testimony to rebut Jenkins' assertion that Dr. Grawe's course of action was negligent. Dr. Serletti testified that Dr. Grawe's actions were reasonable and the leech therapy was consistent with the appropriate standard of care for venous congestion in a pedicle TRAM flap. Dr. Halpern, appellants' other expert witness, defended Dr. Grawe's use of leech therapy and expressly disagreed with Dr. Moon's testimony. Unlike the plaintiffs in *Cox*, the trial court did not prevent appellants from presenting rebuttal testimony to counter Jenkins' theory of proximate cause.

{¶ 20} Furthermore, although appellants characterize Jenkins' decision not to have the DIEA procedure as one of "proximate cause," the issue was, at best, one of "but for" causation. *See Anderson v. St. Francis-St. George Hosp., Inc.,* 77 Ohio St.3d 82, 84 (1996) (emphasis sic) (causation is established with reference to conduct that is "a cause of the event (or harm) if the event (or harm) would not have occurred *but for* that conduct"). Appellants assert that their expert witnesses were both going to offer the opinion that "had the DIEA procedure been performed, the TRAM Flap would not have failed." (Appellants' Brief at 17.) This remote element of "but for" causation is not relevant to the issue of liability for the negligence. *See, e.g., Tanzi v. New York Cent. Rd. Co.,* 155 Ohio St. 149, 159 (1951) (stating that "there can be no liability if the cause is a remote cause and not a proximate cause"). In spite of appellants' assertion at trial that they were not pursuing a comparative fault defense, the attempt to have the jury question the effect of Jenkins' decision would only have invited speculation about whether she must bear part of the blame for her injuries.

{¶ 21} Because the trial court did not abuse its discretion in ruling that evidence concerning Jenkins' refusal to undergo the DIEA procedure was irrelevant to the issue of proximate cause, appellants' first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 22} In their second assignment of error, appellants argue the trial court abused its discretion when it excluded evidence concerning the risks and complications of the surgery. More specifically, they argue the trial court improperly excluded from evidence a consent form signed by Jenkins. Appellants claim they did not intend to introduce the consent form to show that Jenkins waived her rights or that she consented to have the procedure performed negligently, but "solely" to show that Dr. Grawe had disclosed "the risks and benefits of the procedure" with Jenkins, including the possible failure of the TRAM flap. (Appellants' Brief at 37.)

{¶ 23} No prejudice results from the exclusion of evidence that is cumulative of evidence admitted elsewhere during trial. *See Westlake v. Ohio Dept. of Agriculture*, 10th Dist. No. 08AP-71, 2008-Ohio-4422, ¶ 27 (affirming the exclusion of testimony that would only have been cumulative of other evidence demonstrating bias). Here, there was ample evidence before the jury that Dr. Grawe had disclosed the risks and benefits of the surgery to Jenkins. The following exchange occurred during Jenkins' cross-examination:

> Q: You knew on October 4 when you were meeting with Dr. Grawe that even if the surgery is done correctly the flap could either partly or totally fail and not survive, true?
>
> A: After her assuring me that she was going to be able to do a good job, yes, we still -- she mentioned that, yes.

(Tr. Vol. III at 647-48.)

{¶ 24} Jenkins also testified she was aware of the risks regarding wound healing and infection in the event that the TRAM flap failed. In addition, Dr. Grawe testified she had disclosed the risks to Jenkins. With this testimony before the jury, the introduction of the consent form would only have presented cumulative evidence of the fact that Jenkins consented to the procedure after being apprised of the risks. We conclude the trial court did not abuse its discretion when it excluded the consent form.

{¶ 25} Therefore, appellants' second assignment of error is overruled.

### C. Third Assignment of Error

{¶ 26} Appellants' third assignment of error asserts that the trial court abused its discretion by allowing Jenkins' expert witness, Dr. Moon, to present "a new theory of negligence" during his testimony. Appellants assert that they were "surprised and prejudiced" when Dr. Moon testified Dr. Grawe should have transferred Jenkins to another hospital to perform a vein-to-vein microsurgery after the venous congestion occurred. Because Dr. Moon had not made the statement during his deposition, appellants assert that they were entitled to have his opinion seasonably supplemented in accordance with Civ.R. 26(E)(1). Thus, they believe that they were denied the opportunity to prepare an effective cross-examination and prejudiced in their ability to present a defense. (Appellants' Brief at 41-43.)

{¶ 27} Under Civ.R. 26(E)(1), a party has a continuing obligation to seasonably supplement the responses of an expert witness concerning the "subject matter on which he is expected to testify." "An objective of this rule is to provide opposing counsel with updated and complete discovery regarding the substance of expert testimony." *Shumaker v. Oliver B. Cannon & Sons, Inc.,* 28 Ohio St.3d 367, 370 (1986).

{¶ 28} The trial court did not err by not striking Dr. Moon's testimony asserting that Dr. Grawe should have transferred Jenkins to another hospital. First, Dr. Moon's statement did not present a materially new theory of negligence. Dr. Moon opined that, under a reasonable standard of care, a physician would perform microsurgery to address the venous congestion that occurred after the initial breast reconstruction procedure. Dr. Grawe testified for the first time at trial that she did not have microsurgery privileges at Mount Carmel St. Ann's Hospital because the facility lacked the proper equipment to perform it. Dr. Moon testified he assumed the hospital had such capabilities up until hearing Dr. Grawe's testimony. He did not change the substance of his opinion regarding the standard of care that should have been applied, which was that Dr. Grawe should have performed microsurgery to address the complication. The portion of his opinion that was material to Jenkins' theory of negligence was identifying the treatment she should have received, not the physical location where it should have been performed.

{¶ 29} Second, the trial court attempted to remedy any element of surprise resulting from Dr. Moon's statement. It repeatedly offered appellants the opportunity to question

Dr. Moon on this issue outside the hearing of the jury, but those offers were declined. Given this fact, the argument that appellants were denied any opportunity to prepare in advance to cross-examine Dr. Moon on his statement is not persuasive.

{¶ 30} Because the trial court did not abuse its discretion in allowing Dr. Moon to testify that Dr. Grawe should have transferred Jenkins to a facility where the microsurgery could be performed, appellants' third assignment of error is overruled.

### D.  Fourth Assignment of Error

{¶ 31} Appellants' fourth assignment of error asserts that the trial court abused its discretion by sua sponte dismissing two potential jurors during voir dire without good cause. They argue it was "improper" to dismiss the jurors because there was nothing in the record to support their dismissal that satisfied the requirements of R.C. 2313.17(B) or 2313.17(D).  (Appellants' Brief at 44-46.)

{¶ 32} The statute governing challenges to persons called as jurors, R.C. 2313.17, provides a mechanism for parties to challenge potential jurors for cause. R.C. 2313.17(B) provides nine "good cause" reasons under which a party may challenge a potential juror, including conflicts of interest, relationships to parties, or an admission of an inability to be fair and impartial. A catchall provision allows challenges based on "suspicion of prejudice against or partiality for either party, or for want of a competent knowledge of the English language, or other cause that may render the juror at the time an unsuitable juror." R.C. 2313.17(D). In all cases, the court is the arbiter of the challenge and decides whether a party has demonstrated the good cause necessary to dismiss the potential juror. R.C. 2313.17(C) (stating that the "validity" of any challenge for cause must be "tried by the court"); R.C. 2313.17(D) (stating that "validity of the challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased"). A trial court's decision to dismiss a juror will not be disturbed absent an abuse of discretion. *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 94.

{¶ 33} R.C. 2313.17 does not provide a method for challenging a court's sua sponte decision to excuse a potential juror. The Supreme Court of Ohio has stated, however, that a trial court's decision to excuse a potential juror for cause "is not cognizable error, since a party has no right to have any particular person sit on the jury. Unlike the erroneous denial of a challenge for cause, an erroneous excusal cannot cause the seating of a biased juror and

therefore does not taint the jury's impartiality." *State v. Sanders*, 92 Ohio St.3d 245, 249 (2001). This principle applies in both criminal and civil voir dire proceedings. *See Peters v. Lohr*, 1st Dist. No. C-060230, 2007-Ohio-7062, ¶ 56 (applying *Sanders* and holding that even assuming arguendo that the trial court erred in dismissing the potential juror, the plaintiff could demonstrate no prejudice from the dismissal).

{¶ 34} Here, during voir dire, one prospective juror stated that Dr. Grawe's practice, Roxy Plastic Surgery, LLC, rented space in the building where he worked. He stated this fact would not influence his decision as a juror and he had never actually met Dr. Grawe. However, upon further questioning, he also stated he had just started working for Mount Carmel as a practice manager, that encountering Dr. Grawe in the future might be "uncomfortable," and he agreed with the statement that it might be difficult for him to be fair and impartial. (Tr. Vol. I at 154.) After a lengthy discussion and objection by appellants' attorney, the trial court excused the prospective juror without requiring either party to use a challenge.

{¶ 35} Another prospective juror indicated he had previously undergone "five major surgeries." (Tr. Vol. I at 124.) One of the procedures was plastic surgery to address a melanoma that had been removed. The healing process took longer than expected and resulted in a "nasty looking scar." (Tr. Vol. I at 127.) He also had problems healing from his other surgeries. The prospective juror stated he could be fair to both parties. The trial court asked him if he would be "more comfortable" not serving on the jury, noting that the trial could last for four or five days. The prospective juror said "probably," but also stated that he was "fine." The trial court thanked him for participating and excused him. (Tr. Vol. I at 139.)

{¶ 36} Because appellants were not entitled to any particular jurors, the trial court's sua sponte dismissal of the two potential jurors cannot be the basis for a reversal. *See Sanders*. Furthermore, the trial court did not abuse its discretion in sua sponte dismissing the two potential jurors. The first prospective juror's statements reasonably demonstrated an impartiality problem, which is a basis for removal. *See* R.C. 2313.17(B)(9). And the other prospective juror's statements raised an issue as to his physical ability to attend the multi-day trial based on his extensive medical history. The circumstances reasonably justified the dismissal under the catchall provision. *See* R.C. 2313.17(D).

{¶ 37} For these reasons, appellants' fourth assignment of error is overruled.

**E.  Fifth Assignment of Error**

{¶ 38} Appellants' fifth assignment of error concerns the trial court's comments made in response to jurors' questions about the concept of proximate cause.  Appellants argue these comments were improper and prejudicial.

{¶ 39} "It is within the sound discretion of the trial court to provide supplemental instructions in response to a question from the jury."  *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831, ¶ 11, citing *State v. Thompson*, 10th Dist. No. 97APA04-489 (Nov. 10, 1997), citing *State v. Maupin*, 42 Ohio St.2d 473 (1975).  "The trial court's response, when viewed in its entirety, must constitute a correct statement of the law and be consistent with or properly supplement the jury instructions that have already been given."  *Campbell* at ¶ 11.  A court's response to a jury's question during deliberation will not be disturbed absent an abuse of discretion.  *State v. Carter*, 72 Ohio St.3d 545, 553 (1995); *Blust v. Lamar Advertising of Mobile, Inc.*, 183 Ohio App.3d 478, 2009-Ohio-3947, ¶ 29 (2d Dist.).

{¶ 40} Here, during jury deliberations, it came to the trial court's attention that a juror had performed a Google search on her cell phone of the word "proximate."  Upon being questioned, the juror stated that although she had searched for the word, she did not read the results because she was stopped by the other jurors.  The juror stated that the jury did not understand the definition in the jury instructions.  Over appellants' objection, the trial court decided to reread the definition of proximate cause to the jury.  The trial court stated to the jury:

> All right. Now, there has been no harm done by this juror attempting to Google. She never got done with it, so there's no issue there, okay. The best I can do for you is to reinstruct you on the definition. And I know you've been over it, but I want you to listen very carefully.
>
> A party who seeks to recover for injuries and damages must prove not only that the other party was negligent, but also that such negligence was a proximate cause of the injuries or damages.
>
> What is proximate cause? Proximate cause is an act or failure to act that in the natural and continuous sequence directly produces the injury and without which it would not have

occurred. The additional language is if you find from the evidence that there is more than one cause, that there may be more than one proximate cause.

When the negligent act or failure to act of one party combines with the negligence of another to produce the injury or damage, the negligence of each is a cause. It is not necessary that the negligence of each occur at the same time or place or that there be a common purpose or action.

I'm not going to ask you if you are hung up on two versus three. I'm not going to ask you that. I'm just going to tell you that all three are -- are -- both are applicable perhaps in this case as to you determining that. You've got to determine whether there's more than one cause. If there was not, you go with the one cause. So I hope that helps.

(Tr. Vol. VI at 1353-54.)

{¶ 41} Appellants argue that the comments made by the trial court after rereading the definition "instructed the jury that the requisite element of proximate cause was proven," and told the jury that its only task was to "go with one cause" if it did not conclude that there were multiple proximate causes. (Appellants' Brief at 48.)

{¶ 42} When considered in light of the circumstances under which they were made, the comments did not instruct the jury that proximate cause had been proven. Immediately after telling the jury to "listen very carefully," the judge stated that the plaintiff "must prove" proximate cause. (Tr. Vol. VI at 1353.) The definition also emphasized each juror's role in making the determination: "if you find from the evidence that there is more than one cause, that there may be more than one proximate cause." In light of these statements, the added comments functioned as a hypothetical to explain that more than one proximate cause may cause a plaintiff's injury.

{¶ 43} The trial court's intentions are even clearer when the actual jury instruction is read in conjunction with the transcript. The trial court stated: "I'm not going to ask you if you are hung up on two versus three. I am not going to ask you that." (Tr. Vol. VI at 1354.) Reading this statement only in the transcript gives the impression that the trial court was referring to two or three causes. However, the proximate cause instruction as formatted on the page divided the proximate cause definition into three numbered parts. "Two" and "three" were the headings for each portion of the definition that the trial court had just read.

(Apr. 20, 2016 Jury Instructions, Interrogs. & Verdict Forms at 8.) When the entire context is considered, it is clear that the trial court's statement that "both are applicable perhaps in this case as to you determining that" referred only to the parts of the definition that had just been read. (Tr. Vol. VI at 1354.)

{¶ 44} Furthermore, in the jury instructions, the jury was specifically advised as follows: "If you have the impression that I have indicated how any disputed fact should be decided, you must put aside such an impression because that decision must be made by you based solely upon the facts presented to you in this courtroom." (Tr. Vol. VI at 1297-98.) "It is presumed that the jury followed the court's instructions." *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, ¶ 147. Appellants have not overcome this presumption.

{¶ 45} Accordingly, appellants' fifth assignment of error is overruled.

## F. Sixth Assignment of Error

{¶ 46} In their sixth assignment of error, appellants argue that the trial court erred by entering judgment in Jenkins' favor because the evidence and testimony introduced at trial did not support the jury's answer to the narrative interrogatory jury instruction on negligence.

{¶ 47} Under Civ.R. 49(B), interrogatories may be included with instructions submitted to a jury, and they "may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law." "The essential purpose to be served by interrogatories is to test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.*, 28 Ohio St.3d 333, 336-37 (1986), citing *Davison v. Flowers*, 123 Ohio St. 89, 96 (1930). A court should attempt to reconcile the general verdict and interrogatory answers whenever reasonably possible. *See generally Otte v. Dayton Power & Light Co.*, 37 Ohio St.3d 33, 41 (1988). However, if the trial court is forced to conclude the jury's answers to the interrogatories are internally inconsistent or inconsistent with the verdict, the court, pursuant to Civ. R. 49(B), may enter judgment consistent with the answers notwithstanding the verdict, return the matter to the jury for further consideration, or order a new trial. *Proctor v. Hankinson*, 5th Dist. No. 08 CA 0115, 2009-Ohio-4248, ¶ 43. Of these three

options, " 'the clear, best choice [is] to send the jury back for further deliberations.' " *Id.* at ¶ 44, quoting *Shaffer v. Maier*, 68 Ohio St.3d 416, 421 (1994).

{¶ 48} Here, the jury interrogatory at issue asked the jury to "state how and in what respect(s) Dr. Katharine Grawe was negligent." The jury responded: "as to her failure to diagnose and treat the complication of severe venus [sic] congestion that arose from her [sic] breast reconstruction surgery." (Apr. 20, 2016 Jury Instructions, Interrogs. & Verdict Forms at 16.) According to appellants, this response was "completely unsupported by the evidence" because nothing demonstrated that Dr. Grawe failed to diagnose or treat Jenkins, but rather, that the treatment was negligent. (Appellants' Brief at 50.) We disagree.

{¶ 49} The jury's response to the interrogatory was neither inconsistent nor irreconcilable with its verdict. Jenkins' theory of negligence asserted that Dr. Grawe should have performed microsurgery to treat the venous congestion that arose after surgery, and that she failed to do so. The jury's reference to a failure to diagnosis is consistent with the evidence that Jenkins presented that Dr. Grawe failed to recognize the severity of the complication or to begin treatment in a timely enough manner, as Dr. Moon testified. Furthermore, the treatment in lieu of microsurgery that Dr. Grawe attempted failed. The jury statement that Dr. Grawe failed to "treat the complication" is consistent with the evidence that the treatment she ordered did not alleviate the venous congestion. Because the jury's answer to the narrative jury interrogatory was consistent and reconcilable with its verdict, the trial court properly entered judgment in favor of Jenkins without taking any action authorized under Civ.R. 49(B).

{¶ 50} Therefore, appellants' sixth assignment of error is overruled.

### G. Seventh Assignment of Error

{¶ 51} Appellants' seventh assignment of error asserts that the trial court abused its discretion in permitting the admission of evidence concerning Jenkins' medical bills. First, they argue that Jenkins failed to demonstrate that the medical bills were reasonable because she failed to present expert testimony to explain to the jury what portions of the expenses were proximately caused by Dr. Grawe's negligence. Second, they argue that because Jenkins' health insurer paid all of her medical bills, it was the real party in interest to any action seeking compensation for her injuries. Because the insurer was never joined as a party, appellants contend that the medical bills were not relevant.

{¶ 52} R.C. 2317.421 defines the evidentiary weight given to medical bills in personal injury actions. The statute states:

> In an action for damages arising from personal injury or wrongful death, a written bill or statement, or any relevant portion thereof, itemized by date, type of service rendered, and charge, shall, if otherwise admissible, be prima-facie evidence of the reasonableness of any charges and fees stated therein for medication and prosthetic devices furnished, or medical, dental, hospital, and funeral services rendered by the person, firm, or corporation issuing such bill or statement, provided, that such bill or statement shall be prima-facie evidence of reasonableness only if the party offering it delivers a copy of it, or the relevant portion thereof, to the attorney of record for each adverse party not less than five days before trial.

{¶ 53} The Supreme Court of Ohio noted that before the passage of R.C. 2317.421, "Ohio courts 'require[d] the usually empty ceremonial of having a doctor testify that the charge * * * made for a particular service is a reasonable and customary one.' " *Moretz v. Muakkassa*, 137 Ohio St.3d 171, 2013-Ohio-4656, ¶ 93, quoting *De Tunno v. Shull*, 166 Ohio St. 365, 377 (1957) (Bell, J., concurring). *Moretz* rejected the contention that expert testimony was required to prove the reasonableness of medical expenses paid after the provider had written off portions of them. *Id.* at ¶ 94 ("There is no basis for requiring expert-witness testimony that the actual amounts charged for medical services are reasonable, when the initial charges for the services are admissible into evidence without such testimony."). Similarly, we have held that "testimony on the issues of reasonableness and necessity is not a precondition for admission of medical bills into evidence." *Coleman v. Drayton*, 10th Dist. No. 93APE10-1402 (Mar. 24, 1994).

{¶ 54} Under *Moretz* and *Coleman*, expert testimony is not required to admit medical bills as evidence of damages. Rather, under R.C. 2317.421, medical bills are prima facie evidence of the amount the plaintiff seeks to prove. Here, appellants have not cited to a single line of any of the medical bills admitted by the trial court into evidence to illustrate the complexity that they believe required the testimony of an expert. They simply assert that "there was no way for the jury, itself, to determine what part of the medical bills were proximately related to the alleged negligence of Defendants." (Appellants' Brief at 52.) Appellants also do not specify which charges on the bills were not the result of the negligence found by the jury. We cannot conclude that the trial court abused its discretion

in admitting the medical bills in question under R.C. 2317.421 without burdening the parties with "the expense and 'the usually empty ceremonial' of expert testimony on reasonableness." *Moretz* at ¶ 94, quoting *De Tunno* at 377.

{¶ 55} Appellants' second argument concerns Jenkins' alleged failure to join her insurer as the real party in interest to the action.  The trial court ruled that Jenkins was the only real party in interest.  The trial court noted that her insurer, TRICARE, was a federal entity, and under 42 U.S.C. 2651, the Federal Medical Care Recovery Act, the United States may, but is not required, to be a party to a tort action that seeks recovery from a tortfeasor for federal funds used to pay medical expenses of an injured plaintiff.  The trial court also based its ruling on a letter that Jenkins had received from the Judge Advocate's Office at Fort Knox informing her that, under 42 U.S.C. 2651, she had no authority to settle any of her claims against appellants and that "any recovery she makes must be paid over to TRICARE."  (Tr. Vol. IV at 735.)

{¶ 56} Pursuant to 42 U.S.C. 2651(a), the United States has a right to recover medical expenses paid to treat an injured person due to "circumstances creating a tort liability upon some third person."  Under the statute:

> the United States Government has three ways of recovering for medical and hospital care furnished to a plaintiff claiming tort liability by a third person: (1) by subrogation; (2) by intervening or joining in any action brought by the injured person; and, (3) by instituting such an action itself or in conjunction with the injured or deceased person. None of these procedures is mandatory: the choice of method is left to the head of the department or agency furnishing such care.

*Conley v. Maattala*, 303 F.Supp. 484, 485 (D.N.H.1969).

{¶ 57} Here, the United States chose not to intervene directly, and instead advised Jenkins that she was required to pay any amount recovered to her federal insurer.  Thus, the action was brought not by the United States itself, but "in conjunction with" Jenkins. *Id.* Consequently, the trial court properly rejected appellants' argument that Jenkins could not bring this action as the real party in interest to recover for damages as reflected in the medical bills.

{¶ 58} For these reasons, appellants' seventh assignment of error is overruled.

**H.  Eighth Assignment of Error**

{¶ 59} Appellants' eighth assignment of error asserts that the cumulative effect of the trial court's errors denied them a fair trial.  Under the doctrine of cumulative error, an appellate court will reverse a criminal conviction if "the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 223.  However, the cumulative-error doctrine does not typically apply to civil cases. *Jarvis v. Hasan*, 10th Dist. No. 14AP-578, 2015-Ohio-1779, ¶ 92; *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 124.  Further, having found no error in regard to appellants' other assignments of error, we find no cumulative error. *See Bogdas v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-466, 2009-Ohio-6327, ¶ 43 (without error, harmless or otherwise, there can be no cumulative error).

{¶ 60} Accordingly, we overrule appellants' eighth assignment of error.

**IV.  Disposition**

{¶ 61} Having overruled all eight of appellants' assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, DORRIAN, and LUPER SCHUSTER, JJ.

————————————