[Cite as *Groves v. Ohio State Racing Comm.*, 2020-Ohio-1250.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Paul Groves, | : | |
| Appellant-Appellant, | : | No. 19AP-577 |
| | | (C.P.C. No. 19CV-1608) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio State Racing Commission, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on March 31, 2020

**On brief:** *Graff & McGovern, LPA,* and *John A. Izzo,* for appellant. **Argued:** *John A. Izzo.*

**On brief:** *Dave Yost*, Attorney General, and *Anthony Garcia*, for appellee. **Argued:** *Charles Febus.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant, Paul Groves, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, Ohio State Racing Commission ("commission"), suspending his owner's license for one year and fining him $1,000 for violating certain commission rules. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} In April 2018, the Mahoning Valley Race Course stewards issued ruling No. 2018-057, suspending Groves' license as a race horse owner for one year and fining him $1,000. This ruling was based on his misconduct relating to an Ohio State Department of Agriculture ("OSDA") ordered quarantine at the Mahoning Valley Race Course on March 27, 2018. The stewards found that Groves engaged in conduct that was against the

best interest of racing, in violation of Ohio Adm.Code 3769-2-26(10).  In this regard, the stewards determined that Groves failed to properly follow the Mahoning Valley Race Course security procedures concerning the signing horses in and out of the track property. The stewards also found that Groves failed to answer correctly under oath to the best of his knowledge all questions asked by the commission, or its representatives, pertaining to a racing matter, in violation of Ohio Adm.Code 3769-2-26(12).

{¶ 3}  Groves appealed the stewards' ruling to the commission, which appointed a hearing officer to the matter.  The hearing officer held an administrative hearing in September 2018.  As pertinent to this appeal, the following evidence was presented.

{¶ 4}  In mid-March 2018, one of the horses Groves owned, Mixed Colors, died unexpectedly in Barn 8 at the Mahoning Valley Race Course.  A necropsy of the horse revealed a positive test for equine herpes, a highly contagious and deadly disease for horses. This positive test was immediately reported to the OSDA, which issued a 14-day quarantine order for Barn 8 on March 27, 2018.  During the quarantine, no horses were permitted to leave that barn.  The quarantine was lifted after one day because it was determined that, while Mixed Colors was carrying equine herpes, the disease was not active at the time of the horse's death.

{¶ 5}  Commission investigator Mark Peters testified that, at approximately 1:30 p.m. on March 27, 2018, he personally notified everyone in Barn 8, including Groves, that all horses in that barn were quarantined until further notice.  Later that day, two horses owned by Groves, Raven About Richie and Axis Mundi, were not present in Barn 8 as expected.  The next day, racetrack security personnel informed Peters that within two hours of the Barn 8 quarantine taking effect, a truck and trailer, owned by Groves, had violated security protocol by proceeding through the security checkpoint without stopping.  The truck was driven by a jockey affiliated with Groves.  This jockey explained to Peters that he did not stop at the gate because he had trouble operating the truck.  Security guard John King informed Peters that Groves' trailer "rode heavy" and was "pretty confident the trailer was loaded."  (Record of Proceedings at E3020-N28, Tr. at 28.)  When Groves was interviewed under oath on April 7, 2018, he stated that the horses in question were not on the grounds at the time of the quarantine.  He indicated that Axis Mundi had never been on the grounds and that Raven About Richie had been removed from the grounds sometime

before the quarantine went into effect. Rich Vickers, who trained Axis Mundi and Raven About Richie until approximately March 23, 2018, told Peters that those horses were trained and stabled in Barn 8. Upon reviewing the racetrack records, namely the "in and out sheets," regarding the movement of horses, it was clear to Peters that the horses at issue were on the grounds when the quarantine was implemented. (Record of Proceedings at E3020-N25, Tr. at 25.) Peters acknowledged at the hearing that mistakes do occur regarding documenting the movement of horses.

{¶ 6} Daryl Parker testified that he was a steward at Mahoning Valley Race Course at the time of the investigation. Stewards help conduct fact-finding meetings as part of investigations into possible violations of commission rules. At such a meeting, the person who is the subject of the investigation is sworn in by a steward and given an opportunity to have legal counsel present. Soon after the Barn 8 quarantine, the commission initiated an investigation concerning Groves because it was reported that two of his horses were not in Barn 8 during the quarantine when they should have been. At the investigative meeting, Groves denied that either Raven About Richie or Axis Mundi were treated by a veterinarian or even on the grounds of Mahoning Valley Race Course on March 27, 2018. He told the investigators that the horses at issue were at his farm during the quarantine.

{¶ 7} Dr. Scott Shell, a veterinarian with an equine specialty, testified that he treated Raven About Richie and Axis Mundi in Barn 8 at the Mahoning Valley Race Course sometime during the morning of March 27, 2018. When Dr. Shell was asked at the administrative hearing whether there was a chance he did not treat those two horses that day, he stated that "mistakes do happen," but that "after 30 years of practice, we try to have our routine down so we don't make mistakes." (Record of Proceedings at E3020-N95, Tr. at 94.) Additionally, horse trainer Chad Skelton testified that he trained Raven About Richie at Mahoning Valley Race Course a few days before the quarantine was implemented. While Skelton did not train Axis Mundi at that time, both horses were stabled at that racetrack. Skelton was not at Mahoning Valley Race Course on either March 26 or 27, 2018, but Groves was there on those days.

{¶ 8} On October 20, 2018, the commission hearing officer issued her report and recommendation recommending that the ruling of the stewards be affirmed in its entirety and that Groves be assessed a one-year license suspension and a $1,000 fine. The

commission accepted the hearing officer's report and recommendation and upheld the Mahoning Valley Race Course stewards' ruling. Thus, the commission fined Groves $1,000 and suspended his owner's license for one year. Pursuant to R.C. 119.12, Groves appealed the commission's decision to the Franklin County Court of Common Pleas. The trial court affirmed the commission's order suspending Groves' owner's license for one year and fining him $1,000, based on its finding that the order was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 9} Groves timely appeals.

## II. Assignments of Error

{¶ 10} Groves assigns the following errors for our review:

> [1.] The Commission Order is not based upon reliable, probative, and substantial evidence.

> [2.] The Commission Order is not in accordance with law.

## III. Standard of Review

{¶ 11} R.C. Chapter 3769 governs horse racing in Ohio and establishes the commission and its attendant powers. R.C. 3769.03 provides that "[w]ith respect to the issuance, denial, suspension, or revocation of a license to a participant in horse racing, the action of the commission shall be subject to [R.C.] Chapter 119."

{¶ 12} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980). "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. "Substantial" evidence is evidence with some weight; it must have importance and value. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶ 13} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court

'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12. As to questions of fact, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. The common pleas court usually is "confined to the record as certified to it by the agency" and to "newly discovered" evidence that could not reasonably have been adduced before the agency. R.C. 119.12(K).

{¶ 14} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). While the common pleas court must examine the evidence, "[s]uch is not the charge of the appellate court." *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, including whether the common pleas court applied the proper standard of review, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.); *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992) ("it is the prerogative and the responsibility of the court entertaining the appeal to investigate whether the lower court accorded due deference to the factfinder").

## IV. Discussion

{¶ 15} Groves' first assignment of error asserts the trial court erred in affirming the commission's order because it was not based on reliable, probative, and substantial evidence. In support of this contention, Groves argues that the commission improperly relied on hearsay evidence and that the hearing officer did not include pertinent facts in her report and recommendation, which caused the commission to overlook certain testimony. We are unpersuaded.

{¶ 16} As to hearsay evidence, we note that Groves did not object at the administrative hearing to the admission of certain evidence because it was hearsay. "Generally, a party waives the right to appeal an issue that could have been but was not raised in earlier proceedings. * * * This principle has been applied in appeals from administrative agencies." *MacConnell v. Ohio Dept. of Commerce*, 10th Dist. No. 04AP-433, 2005-Ohio-1960, ¶ 21 (when license applicant failed to object to evidentiary defects before the administrative tribunal, those defects could not be asserted as grounds for appeal). Thus, Groves has waived his hearsay argument. And even if not waived, this argument fails on the merits.

{¶ 17} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Ohio Rule of Evidence 802 provides that hearsay is generally not admissible. However, the rules of evidence do not bind administrative agencies. *Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 415, 417 (1996). Unless it is inherently unreliable, hearsay evidence is admissible in administrative hearings, and it can constitute reliable, probative, and substantial evidence. *Westlake v. Ohio Dept. of Agriculture*, 10th Dist. No. 08AP-71, 2008-Ohio-4422, ¶ 19. *See Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 44 (1982) ("evidence which might constitute inadmissible hearsay where stringent rules of evidence are followed must be taken into account in proceedings such as [commission hearings] where relaxed rules of evidence are applied.").

{¶ 18} When evidence is admitted despite being hearsay, a trier of fact must evaluate its reliability and the weight to give that evidence. *In re Petition for Annexation*, 52 Ohio App.3d 8, 15 (10th Dist.1988). While the hearsay rule is relaxed in administrative proceedings, the discretion to consider hearsay evidence cannot be exercised in an arbitrary manner. *H.K. Trading Ctr., Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 09AP-293, 2010-Ohio-913, ¶ 41. Thus, the commission was permitted to consider and give weight, as it deemed appropriate, to hearsay evidence in its review of the matter, provided that it did not exercise that discretion arbitrarily and that the evidence was not inherently unreliable.

{¶ 19} Groves asserts the hearing officer and the commission improperly considered hearsay evidence regarding the presence and removal of Raven About Richie and Axis Mundi at Mahoning Valley Race Course before and after the quarantine because there was

no independently corroborating evidence and the hearsay evidence was inherently unreliable. He reasons that, in the absence of this hearsay evidence, there was no reliable, probative, and substantial evidence supporting the rule violation findings.

{¶ 20} Groves does not explain how the challenged hearsay evidence was inherently unreliable, and we disagree with his assertion that there was no corroborating non-hearsay evidence. At the administrative hearing, commission investigator Peters testified that even though he personally notified Groves about the quarantine on March 27, 2018, he learned that two of Groves' horses, Raven About Richie and Axis Mundi, were not in Barn 8 soon after the quarantine, as expected. Peters also testified that the track's horse inbound and outbound logs indicated that both of the horses at issue had been delivered to the track before the quarantine, but that no log shows their removal before they arrived back at the track on March 30, 2018 (after the quarantine had been lifted). Peters was informed that within two hours after he told Groves and others of the quarantine, a truck and trailer, owned by Groves, was driven by a jockey through a security checkpoint without stopping when the gate had been lifted for another vehicle. The security guards did not actually see horses in the trailer, but the trailer appeared to be transporting something heavy. Further testimony at the hearing indicated that Groves was a very involved owner and was at Mahoning Valley Race Course on March 27, 2018, when he was personally informed of the quarantine. Additionally, Dr. Shell's testimony and his treatment records regarding the horses at issue indicated those horses were at the Mahoning Valley Race Course on March 27, 2018. Despite Dr. Shell testifying that he treated the horses at issue in Barn 8 hours before the start of the quarantine, and it being undisputed that the horses at issue were not in Barn 8 soon after the quarantine, racetrack records did not document the removal of the horses on March 27, 2018. Groves told investigators that Raven About Richie and Axis Mundi were not at the race track immediately before the quarantine, which directly contradicted Dr. Shell's hearing testimony and documentary evidence that was consistent with Dr. Shell's testimony.

{¶ 21} Thus, the evidence reasonably indicated that Groves did not comply with security procedures regarding the proper signing of horses in and out of track property and that he failed to answer correctly under oath to the best of his knowledge questions asked during the commission investigation into reports that two of his horses had been

improperly removed during an OSDA ordered quarantine. Because we disagree with Groves' assertion that the commission relied entirely on hearsay evidence to reach its conclusions, and because Groves fails to identify any inherently unreliable hearsay evidence relied on by the commission, we reject his arguments as to the commission's consideration of hearsay evidence.

{¶ 22} Groves' argument that the hearing officer did not include certain pertinent information in her report and recommendation essentially constitutes disagreement with her assessment of the evidence. He asserts the commission was not aware that Peters testified that he did not know what horses were in Barn 8 when it was quarantined, that the security guards did not tell Peters that there was a horse in Groves' trailer that was driven through the security checkpoint by a jockey, that Dr. Shell did not identify horses prior to treating them on March 27, 2018, that there was testimony that Groves is a good guy, and that a state steward did not know what happened to the horses on March 27, 2018. He argues the hearing officer's presentation of the facts unfairly precluded the commission from evaluating all of the evidence. According to him, the totality of the evidence showed he did not violate the rules of racing, and he suggests the commission did not duly consider his objections to the hearing officer's report and recommendation. We disagree.

{¶ 23} In his objections to the hearing officer's report and recommendation, Groves, with references to the hearing transcript, cited to each of the facts listed above that he contends were not properly considered by the hearing officer. Contrary to Groves' suggestion, however, the commission's adjudication order expressly indicates that it considered Groves' objections as part of its review of the hearing officer's report and recommendation. Simply because the commission was not persuaded by Groves' objections, which reflected his view of the evidence, does not mean the commission did not consider the objections before it approved the hearing officer's report and recommendation, or that the order was not supported by reliable, probative, and substantial evidence.

{¶ 24} Accordingly, we overrule Groves' first assignment of error.

{¶ 25} In his second assignment of error, Groves contends the commission's order was not in accordance with law. Thus, he argues the trial court erred in not reversing the commission's order on this basis. This assignment of error also lacks merit.

{¶ 26} Groves argues the commission's order was contrary to law because commission stewards do not have the authority to swear in witnesses. He reasons that he did not fail to answer correctly under oath to the best of his knowledge all questions asked in connection with a commission investigation because he was not properly placed under oath.

{¶ 27} An administrative agency has no authority beyond the authority given to it by statute. *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 171 (2000). *See Burger Brewing Co. v. Thomas*, 42 Ohio St.2d 377, 379 (1975) (authority that is conferred by the General Assembly cannot be extended by the administrative agency). "A grant of such statutory power may be express or implied, but the implied power is limited to that which is reasonably necessary to make the express power effective." *Ohio Fresh Eggs, LLC v. Boggs*, 183 Ohio App.3d 511, 2009-Ohio-3551, ¶ 28 (10th Dist.).

{¶ 28} Groves is correct that the General Assembly has not expressly authorized stewards to administer oaths. However, pursuant to R.C. 3769.091, the commission "may delegate to the stewards and judges of racing meetings under the jurisdiction of the commission the power to suspend licenses for not to exceed one year and to impose fines not to exceed one thousand dollars for any violation of the rules or orders of the commission." Commission rules prohibit a licensee from failing "to answer correctly under oath to the best of his/her knowledge all questions asked by the commission, or its representatives, pertaining to a racing matter." Ohio Adm.Code 3769-2-26(A)(12). In view of this statute and rule, the authority of a steward to administer an oath as part of an investigation into a possible commission rule violation is a necessarily implicit aspect of the statutory authority granted to the commission. Thus, we reject Groves' argument that he could not have violated Ohio Adm.Code 3769-2-26(A)(12) because the steward had no authority to place him under oath.

{¶ 29} Groves also argues the commission's order was not in accordance with law because he did not receive due process during the administrative proceeding. He contends that a deputy director of the commission, Michael Rzymek, improperly participated at the commission hearing, preventing him from receiving a fair hearing. Rzymek did not formally make an appearance on behalf of the commission at the hearing, but he made a

few advisory comments during witness testimony. In particular, Groves asserts Rzymek improperly interfered with witness testimony during the administrative hearing by telling witnesses to wait for a question before talking, to just answer a question, and to say yes or no instead of using a head nod. Groves argues these interjections prejudiced him because they effectively limited witness testimony that may have been favorable to him.

{¶ 30} We are unpersuaded that Groves was prejudiced by Rzymek's statements at the administrative hearing. Rzymek's comments related to the procedural aspects of the hearing and did not substantively guide witness testimony. When Rzymek told a witness to just answer the question, the hearing officer admonished Rzymek not to speak during the witness testimony because the cross-examining attorney was entitled to lead the witness as he saw appropriate, and the questioning of that witness continued. Groves also argues Rzymek was not the appropriate person to interject to help ensure basic procedure compliance, but he does not explain how he was prejudiced by Rzymek advising a witness to verbalize his response and to wait for a question to be completed before answering. In sum, we disagree with Groves' contention that Rzymek's interjections during the hearing precluded him from receiving due process.

{¶ 31} Groves further contends the commission improperly made inferences against him because he did not testify at the administrative hearing, resulting in the commission improperly relying on hearsay testimony as support for its order. The hearing officer's report and recommendation detailed the testimony and evidence presented at the hearing on behalf of the commission and noted that Groves did not testify, call any witnesses, or produce any exhibits at the hearing. But there is no indication that the commission made any adverse inference based on Groves deciding not to either testify or otherwise present evidence at the administrative hearing. Relatedly, insofar as Groves contends it was improper for the commission to rely on hearsay evidence, we reject that contention for the reasons discussed above. Therefore, contrary to Groves' argument, he was not denied due process.

{¶ 32} Lastly, Groves argues the trial court applied the wrong standard in reviewing the commission's order. In reviewing the commission's order, the trial court rejected Groves' argument that the hearing officer and ultimately the commission improperly evaluated the evidence, and it indicated that it would not substitute its judgment for that of

the commission. The trial court further declined Groves' request to find that the evidence the commission cited in support of its order was either legally insufficient or otherwise invalidated by contrary evidence. Groves asserts that, considering this evidentiary deficiency, it was not necessary for the trial court to substitute its judgment for that of the commission in order for it to invalidate the commission's order. Fundamentally, Groves' argument regarding the standard of review applied by the trial court is another challenge to the commission's evaluation of the evidence, including its reliance on hearsay evidence, to find he committed rule violations. For the reasons discussed above, we reject this argument.

{¶ 33} Because the trial court did not err in finding the commission's order to be in accordance with law, we overrule Groves' second assignment of error.

## V. Disposition

{¶ 34} Having overruled Groves' first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and DORRIAN, J., concur.

———————————————