[Cite as *Katsande v. Ohio Dept. of Medicaid*, 2020-Ohio-5488.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Cecilia Katsande, | : | |
| Appellant-Appellant, | : | No. 19AP-375 |
| | | (C.P.C. No. 18CV-10810) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio Department of Medicaid, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on December 1, 2020

**On brief**: *Wright & Noble, L.L.C.*, and *Robert D. Noble*, for appellant. **Argued**: *Robert D. Noble*.

**On brief**: *Dave Yost*, Attorney General, and *Morgan Tendam*, for appellee. **Argued**: *Morgan Tendam*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by appellant, Cecilia Katsande, from a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, Ohio Department of Medicaid ("ODM"), finding Medicaid overpayments to appellant for services during an audit period from July 1, 2011 through June 30, 2014.

{¶ 2} The following background facts are taken primarily from the trial court's decision and entry of May 13, 2019, as well as from a report and recommendation of a hearing examiner for Ohio Department of Developmental Disabilities ("DODD"), filed August 10, 2018. Appellant is certified by DODD as an independent provider and receives

Medicaid reimbursement through ODM as a provider of services to R.D., a developmentally disabled individual.

**{¶ 3}** On June 12, 2017, DODD issued a "Notice of Intended Action and Opportunity for Hearing" to appellant, advising her of DODD's intention to recover $53,568.32 in Medicaid overpayments, and further advising appellant of the right to request a hearing. Appellant requested a hearing and the matter came for hearing before a DODD hearing examiner on July 10, 2018.

**{¶ 4}** In its decision, the trial court noted the following evidence presented during the administrative hearing. By letter dated October 26, 2016, appellant "was notified of a pending review of the payments she received as a provider during the period from July 1, 2011 through June 30, 2014." (Decision at 2.) The letter requested appellant provide all service and support documentation for "homemaker personal care services (APC service code), on site/on call services (AOC service code), and transportation (ATN service code) for the selected months." (Decision at 2.)

**{¶ 5}** In response to the October 26, 2016 letter, appellant "provided her purported service documentation for APC and AOC services." (Decision at 2.) Appellant "did not provide documentation for ATN services, but instead wrote a note stating: 'I did not include my HPC Transportation Monthly Mileage Sheets because they were destroyed when we had an accident at [R.D.'s] apartment in 2015.' " (Decision at 2.) Inasmuch as "no documentation was provided for ATN services, DODD issued full findings for recovery of amounts paid for those services for the months selected for review." (Decision at 2.)

**{¶ 6}** DODD reviewed the documentation provided by appellant for the APC and AOC services, and "compared the units of service [appellant] was paid to provide each day with the units of service actually provided according to the service documentation." (Decision at 2.) On March 28, 2017, Joel Speyer, a DODD auditor, called appellant to discuss the preliminary findings of the review. During this conversation, appellant told Speyer "that the APC and AOC documentation she had submitted had been recreated after her original documentation had been destroyed in an accident." (Decision at 2.) The review by DODD gave appellant "no credit for documentation allegedly destroyed in the accident or for the documentation that had been recreated," and the findings indicated a total "overpayment of $53,568.32." (Decision at 3.)

{¶ 7} Speyer requested "additional information about the accident and insurance claim," and "prepared a memorandum memorializing his conversations with [appellant] regarding the claims involving the accident." (Decision at 3.) According to the memorandum, appellant stated during the initial conversations "that the accident occurred in 2015," but she "later stated that the accident occurred in 2013." (Decision at 3.) In response to Speyer's request, appellant "provided insurance documentation regarding a claim relating to a 2013 accident in which an automobile struck R.D.'s apartment." (Decision at 3.) The documents "contained an itemized list of destroyed property," but the list "did not include service documentation." (Decision at 3.)

{¶ 8} Appellant "testified that she observed the aftermath of the automobile colliding with R.D.'s apartment." (Decision at 3.) According to appellant, "she kept the service documentation 'underneath the TV cabinet' on the wall where the car collided with the apartment." (Decision at 3.) Appellant "stated that she reported the accident to the service coordinator, Lisa Robinson." (Decision at 3.)

{¶ 9} Tracey Crawford, a compliance manager with the Franklin County Board of Developmental Disabilities ("FCBDD"), testified she "followed up with Ms. Robinson, who was then on extended medical leave, with questions about the accident." (Decision at 3.) In an e-mail to Crawford, Robinson "replied that [appellant] did not report that her documentation was destroyed." (Decision at 3.) Robinson further stated appellant "did not typically keep documents in the client's home, but kept them in her own home." (Decision at 4.)

{¶ 10} Halina Schroeder, DODD's audit chief, testified that DODD's waiver review committee met to discuss the matter, and the committee "did not accept the claim that the documents were destroyed in an accident for several reasons." (Decision at 4.) Specifically, Schroeder noted that: (1) "the service coordinator stated in an email that she never saw service documentation within R.D.'s home," (2) appellant had "initially submitted documentation to DODD's auditor without mentioning an accident, and did not claim the APC and AOC documentation was destroyed until after the auditor stated that she would have monetary findings," (3) "Schroeder stated that her office did not receive a police report or incident report regarding the accident," and (4) "[t]he allegedly destroyed documents were not mentioned in the insurance claim." (Decision at 4.) Schroeder further testified

the committee was "skeptical that the documentation was in the home of the individual at the time that the accident occurred."  (Decision at 4.)

{¶ 11} On August 10, 2018, the hearing examiner issued a 31-page report and recommendation concluding the agency's audit findings "were legally and factually valid." (Decision at 4.)  The hearing examiner determined the testimony and documentary evidence presented at the hearing established that appellant "recreated documentation she claimed was destroyed in the 2013 accident; that she did not enlist the assistance of the Department or the Franklin County Board in the aftermath of the accident; and that she did not inform the Department of the fact she recreated the documentation until after the waiver review was completed." (Report and Recommendation at 28.)  The hearing examiner found "no direct evidence at hearing, other than [appellant's] uncorroborated testimony, that R.D.'s service documentation was destroyed in the 2013 accident," and that the record contained "no copies of retrieved documentation or photographs of damaged documents."  (Report and Recommendation at 28.)

{¶ 12} The hearing examiner found appellant "not credible in her explanation of the accident and the destruction of the documents." (Report and Recommendation at 28.)  The hearing examiner noted appellant was "inconsistent in her reporting of the date of the accident to the Department," and that appellant "stated she kept the destroyed documentation in a cabinet in R.D.'s apartment, at the exact spot where the car struck the apartment, while other documentation kept in another location was not damaged." (Report and Recommendation at 28.)  The hearing examiner cited testimony by appellant that the documentation "was kept in 'kind of a box,' * * * and that the documents remained in the box when the car struck the apartment, but all of the documents were apparently ruined by oil."  (Report and Recommendation at 28.)  The hearing examiner recommended the director of ODM issue an adjudication order of overpayment to appellant in the amount of $53,568.32.

{¶ 13} Appellant filed objections to the hearing examiner's report and recommendation.  On December 17, 2018, the director of ODM issued an adjudication order adopting the hearing examiner's report and recommendation and implementing the findings against appellant of an overpayment of $53,568.32.

{¶ 14} On December 31, 2018, appellant filed an appeal with the trial court from the order of ODM. On May 13, 2019, the trial court issued its decision and entry affirming the adjudication order, finding it was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 15} On appeal, appellant sets forth the following single assignment of error for this court's review:

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT DETERMINED THAT THE DIRECTOR OF THE OHIO DEPARTMENT OF MEDICAID ISSUED AN ADJUDICATION ORDER SUPPORTED BY RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE, AND IS IN ACCORDANCE WITH LAW.

{¶ 16} Under her single assignment of error, appellant asserts the trial court abused its discretion in determining the order of ODM, finding an overpayment, was supported by reliable, probative, and substantial evidence, and was in accordance with law. Appellant contends the DODD hearing examiner relied on impermissible and prejudicial hearsay evidence, and further argues the trial court either failed to consider evidence relevant to the waiver of overpayment, or similarly considered impermissible hearsay and inferences.

{¶ 17} In considering an administrative appeal under R.C. 119.12, "a common pleas court 'may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law.' " *Mocznianski v. Ohio Dept. of Medicaid*, 10th Dist. No. 18AP-894, 2020-Ohio-165, ¶ 20, citing R.C. 119.12(M); *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619 (1993). In order "[t]0 be 'reliable,' evidence must be dependable and true within a reasonable probability." *Mocznianski* at ¶ 20, quoting *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). In order "[t]o be 'probative,' evidence must be relevant or, in other words, tend to prove the issue in question." *Id.* In order "[t]o be 'substantial,' evidence must have importance and value." *Id.* Further, in reviewing an administrative appeal " 'the common pleas court does not provide a trial de novo, but rather "the Court of Common Pleas must give due deference to the administrative resolution of evidentiary conflicts." ' " *Id.*, quoting *Capital Care Network of Toledo v. Ohio Dept. of Health*, 153 Ohio

St.3d 362, 2018-Ohio-440, ¶ 25, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-11 (1980).

{¶ 18} By contrast, "[t]he standard of review for a court of appeals in an administrative appeal is even more limited." *Id.* at ¶ 21. With respect to "factual issues, we must determine whether the common pleas court abused its discretion." *Id.,* citing *Avalon Resort & Spa LLC v. State Unemp. Comp. Rev. Comm.*, 10th Dist. No. 18AP-212, 2018-Ohio-4294, ¶ 20, citing *Miracle Home Health Care, L.L.C. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. However, in determining whether the decision of the agency "was in accordance with law, we exercise plenary review." *Id.,* citing *Avalon* at ¶ 20, citing *BNA Constr., Ltd. v. Dir. of Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 16AP-317, 2017-Ohio-7227, ¶ 25, citing *BRT Transp. LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 15.

{¶ 19} R.C. 5164.58(A) states, "[i]f a state agency that enters into a contract with the department of medicaid under section 5162.35 of the Revised Code identifies that a medicaid overpayment has been made to a medicaid provider, the state agency may commence actions to recover the overpayment on behalf of the department." Thus, R.C. 5164.58 affords "state agencies in contract with ODM for the administration of components of the Medicaid program with the authority to commence actions to recover Medicaid overpayments made to a Medicaid provider." *Mocznianski* at ¶ 17.

{¶ 20} Pursuant to R.C. 5164.58(B)(1), "[t]he state agency shall attempt to recover the overpayment by notifying the medicaid provider of the overpayment and requesting voluntary repayment." In accordance with R.C. 5164.58(B)(2), "[i]f the state agency is unable to obtain voluntary repayment of an overpayment, the agency shall give the medicaid provider notice of an opportunity for a hearing in accordance with Chapter 119. of the Revised Code." In the event a Medicaid provider timely requests a hearing under R.C. 119.07 "the state agency shall conduct the hearing to determine the legal and factual validity of the overpayment." *Id.* On completion of such hearing, "the state agency shall submit its hearing officer's report and recommendation and the complete record of proceedings, including all transcripts, to the medicaid director for final adjudication." *Id.*

{¶ 21} Similar to the facts and circumstances in a recent decision of this court, the waiver review period at issue in the instant case (i.e., the audit period of July 1, 2011 through

June 30, 2014) "encompasses multiple revisions to the controlling administrative code provisions." *Mocznianski* at ¶ 18. In this respect, former Ohio Adm.Code 5123:2-9-05(B) (rescinded effective April 19, 2012) provided in part as follows: " 'Service documentation' means the maintenance of all records and information on one or more documents, including documents that can be printed from electronic software programs, in such a manner as to fully disclose the nature and extent of the services delivered."

{¶ 22} Former Ohio Adm.Code 5123:2-9-30(B)(20), effective April 19, 2012, stated as follows:

> "Service documentation" means all records and information on one or more documents, including documents that may be created or maintained in electronic software programs, created and maintained contemporaneously with the delivery of services, and kept in a manner as to fully disclose the nature and extent of services delivered that shall include the items delineated in paragraph (E) of this rule to validate payment for medicaid services.[1]

{¶ 23} Former Ohio Adm.Code 5123:2-9-06(J)(8), effective April 19, 2012, stated in part: "Providers of HCBS waiver services shall maintain the records necessary and in such form to disclose fully the extent of HCBS waiver services provided, for a period of six years from the date of receipt of payment or until an initiated audit is resolved, whichever is longer." Further, "[t]he records shall be made available upon request to the department," and providers "who fail to produce the records requested within thirty days following the request shall be subject to decertification and/or loss of their medicaid provider agreement." Ohio Adm.Code 5123:2-9-06(J)(8).

{¶ 24} Appellant contends the trial court's decision seems to "suggest," because of her failure to provide the APC, AOC and ATN service records for the relevant time period (July 1, 2011 through June 30, 2014), that ODM's payments are recoverable regardless of whether or not she presented evidence explaining the destruction of the documents. (Appellant's Brief at 15.) Appellant argues the trial court "appears to have accepted" the position that no calamity causing the destruction of service records overcomes ODM's authority to recoup payments for services not documented. (Appellant's Brief at 16.)

---

[1] Former Ohio Adm.Code 5123:2-9-30(B)(22), effective January 1, 2014, contained a similar provision.

Appellant maintains the trial court "may not have consider[ed] the destruction of the documents or the potential for waiver of the overpayments." (Appellant's Brief at 17.)

{¶ 25} At the outset, we do not find support for appellant's contention that the trial court deemed the payments recoverable regardless of whether she presented evidence explaining the destruction of documents. While the trial court noted it was "uncontested" appellant "does not have service documentation for services provided for which she received payment," we do not read the court's decision as simply disregarding appellant's testimony as to the circumstances surrounding the lack of documentation. (Decision at 6.) Rather, the trial court, in considering the record presented, accepted the findings and conclusions of the hearing examiner that appellant's testimony (i.e., her explanation as to the events) was not credible.[2]

{¶ 26} Appellant also requests this court to "presume that the evidence relied upon by Appellee was not admissible and inherently unreliable." (Appellant's Brief at 18.) Appellant's argument is based on her claim the hearing examiner impermissibly relied on hearsay evidence in affirming the order of ODM. Appellant acknowledges the hearsay rule is relaxed in administrative hearings; she maintains, however, that ODM and the hearing examiner utilized inherently unreliable and prejudicial hearsay evidence to support its decision as to overpayment. Specifically, appellant points to evidence of an e-mail exchange between witness Crawford and a non-witness, Robinson, admitted during the administrative hearing as state's Exhibit No. 20. Appellant contends the hearing examiner relied on these e-mails, albeit not exclusively, to discredit her testimony that she reported the collision to Robinson, and appellant challenges the trial court's determination that the evidence at issue was not inherently unreliable.

{¶ 27} By way of background, Crawford testified during the administrative hearing that she serves as a point of contact for DODD's audit office with respect to claims in Franklin County. Crawford provided testimony regarding an inquiry she received from

---

[2] We also find unpersuasive appellant's suggestion that this court is "left to guess" whether the trial court applied the burden of persuasion to the correct party because its decision is "devoid of any language acknowledging that DODD bore the burden of production and persuasion." (Appellant's Brief at 19-20.) Appellant acknowledges the lack of any case law "stating specifically that the common pleas court must acknowledge the party bearing the burden." (Appellant's Brief at 20.) Here, appellant does not argue the trial court misstated the appropriate standard, and we note the hearing examiner indicated "[t]he Department has the burden of proof of its allegations by a preponderance of the evidence." (Report and Recommendation at 5.)

DODD regarding a provider (i.e., appellant), and she identified state's Exhibit No. 20 as "an e-mail chain between DODD Bureau Chief Halina Schroeder and myself."  (Tr. at 59.)

{¶ 28} Crawford testified that Schroeder "wanted to know if our service coordinator knew that [appellant's] documentation was destroyed in a car accident.  She wanted to know if I could talk to the service coordinator and try to gather information for her."  (Tr. at 59-60.)  In response, Crawford informed Schroeder that "the service coordinator was on an extended medical leave, and we were waiting to hear from her."  (Tr. at 60.)

{¶ 29} During direct examination, Crawford identified an e-mail she received "from the service coordinator, Lisa Robinson."  (Tr. at 61.)  Crawford had asked Robinson if she "recalled [appellant] telling her that she had been in a car accident that destroyed her provider documentation," and whether appellant "had ever asked her for copies of her own documentation that she had previously submitted to the service coordinator."  (Tr. at 61.)  Over objection by appellant's counsel, Crawford testified that Robinson "did not recall any accident that the provider is speaking of," and appellant "did not report that her documentation was destroyed."  (Tr. at 62.)  Crawford further testified the service coordinator related "[appellant] did not typically keep the documents in the client's home.  She kept them in her own home."  (Tr. at 63.)  Crawford sent the e-mail documents to DODD as part of the waiver review.

{¶ 30} Under Ohio law, "administrative agencies are, generally, not bound by the strict rules of evidence applied in court."  *Westlake v. Ohio Dept. of Agriculture*, 10th Dist. No. 08AP-71, 2008-Ohio-4422, ¶ 19, citing *Haley v. Ohio State Dental Bd.*, 7 Ohio App.3d 1, 6 (2d Dist.1982). Accordingly, "hearsay is not precluded in administrative hearings."  *Id.,* citing *Black v. State Bd. of Psychology*, 160 Ohio App.3d 91, 2005-Ohio-1449, ¶ 17 (10th Dist.).  Although the hearsay rule is relaxed, "the discretion to consider hearsay evidence may not be exercised in an arbitrary manner."  *Id.*, citing *Haley* at 6; *Holzhauser v. State Med. Bd.*, 10th Dist. No. 06AP-1031, 2007-Ohio-5003.

{¶ 31} The Supreme Court of Ohio "has recognized that 'evidence which might constitute inadmissible hearsay where stringent rules of evidence are followed must be taken into account in proceedings * * * where relaxed rules of evidence are applied.' " *Id.*, quoting *Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 44 (1982).  Similarly, this court has held that "hearsay evidence may be considered in administrative proceedings

where the statement is not inherently unreliable and constitutes substantial, reliable, and probative evidence." *Id.*, citing *Doersam v. Gahanna,* 10th Dist. No. 96APF12-1766 (Sept. 30, 1997).

{¶ 32} In addressing appellant's objection to the hearing examiner's reliance on state's Exhibit No. 20, the trial court concluded appellant "has not shown that Exhibit 20 is inherently unreliable" as it contained e-mails from "Robinson, who dealt with Appellant and [R.D.] as the service coordinator, and thus had personal knowledge of these matters." (Decision at 7.) The trial court further found appellant had "not shown that the Hearing Examiner's conclusions were based solely or primarily on Exhibit 20," as such exhibit "was only one piece of evidence considered." (Decision at 7.) Rather, the trial court noted, the hearing examiner citied "a number of factors," including findings that: (1) appellant's explanation of the accident and the destruction of documents was " 'not credible,' " (2) "there was no direct evidence the documents were destroyed," (3) the evidence contained "no copies of retrieved damaged documents or photographs of damaged documents," and (4) appellant was "inconsistent in her reporting of the date of the accident," claiming that "she kept the documents at the exact spot where the car struck the apartment," and stating "the documents were 'kept in a box' but were apparently ruined by oil, etc." (Decision at 7.)

{¶ 33} Appellant primarily contends the e-mail exchange was inherently unreliable because it contained hearsay. As noted, however, administrative agencies are "not bound by the strict rules of evidence applied in court." *Haley* at 6. As to the issue of reliability, the e-mail exchange itself was prompted by a request from DODD to gather information as part of an internal agency review. During the hearing, the FCBDD compliance manager (Crawford) testified as to her e-mail correspondence with the service coordinator (Robinson) assigned to the case and, as noted by the trial court, the service coordinator dealt directly with appellant and R.D. and had personal knowledge of the information at issue. On review, we find no abuse of discretion by the trial court in failing to find the hearing examiner relied on inherently unreliable evidence in admitting the e-mail exchange. *See Holzhauser* at ¶ 20 (trial court did not abuse its discretion in failing to find agency erred in admitting hearsay evidence; nothing in administrative hearing record

indicated testimony of former spouse was inherently unreliable where he testified about his personal observations and experiences with ex-wife).

{¶ 34} Further, "[w]hen evidence is admitted despite being hearsay, a trier of fact must evaluate its reliability and the weight to give that evidence." *Groves v. Ohio State Racing Comm.,* 10th Dist. No. 19AP-577, 2020-Ohio-1250, ¶ 18, citing *In re Petition for Annexation,* 52 Ohio App.3d 8, 15 (10th Dist.1988). *See also Rudd v. Ohio Dept. of Job & Family Servs.,* 2d Dist. No. 2015-CA-9, 2015-Ohio-3796, ¶ 14 ("When evidence is admitted despite being hearsay, the trier of fact must consider whether the evidence is reliable enough to be considered substantial and probative."). Here, the record supports the trial court's determination that ODM did not rely solely on the challenged evidence to reach its determination. *Groves* at ¶ 21 (no error in commission's consideration of hearsay evidence where record does not support appellant's claim that commission relied entirely on hearsay evidence to reach its conclusion, and because the appellant fails to identify any inherently unreliable hearsay relied on by commission). Accordingly, we discern no abuse of discretion by the trial court in failing to find error in the hearing examiner's decision to admit the exhibit at issue.

{¶ 35} Appellant next contends the hearing examiner erred in finding her testimony not credible. According to appellant, the hearing examiner's credibility determination relied upon "six (6) facts and/or inferences" improperly drawn and not supported by reliable or probative evidence. (Appellant's Brief at 32.)

{¶ 36} In response, ODM disputes appellant's contention that the hearing examiner laid out six specific facts and/or inferences in determining that her documentation was not actually destroyed in the accident; rather, ODM argues, appellant extrapolates facts and inferences she believes the hearing examiner relied on.

{¶ 37} Appellant first contests the hearing examiner's finding that the record contained no copies of retrieved documentation, nor any photographs of destroyed documents. Appellant, citing her own testimony that service documents were destroyed when an automobile crashed into the apartment of her client (R.D.), maintains she was prohibited from entering the residence after the collision due to safety concerns.

{¶ 38} In addressing this challenge to the hearing examiner's report, the trial court noted appellant did not dispute the finding at issue (i.e., that there were no copies of

retrieved documentation or photographs of the destroyed documents) but, instead, argued the hearing examiner failed to consider her testimony. The trial court determined, however, upon review of the report and recommendation, that the hearing examiner "considered Appellant's testimony at length, but * * * found the testimony not credible as to the explanation of the destruction of the documents." (Decision at 8.)

{¶ 39} The record supports the trial court's determination that the hearing examiner considered appellant's testimony on this issue. Specifically, the hearing examiner noted appellant's testimony that she stored "the documentation for the APC, AOC, and ATN service codes 'underneath the TV cabinet' on the wall where the car collided with the apartment.' " (Report and Recommendation at 21.) The hearing examiner cited appellant's statement that, upon arriving at the apartment, she "observed that '[t]he car broke, like, the engine, and there's water flowing, like, oil flowing on the floor,' " and that appellant "stated * * * the point of impact with the apartment was where she normally sits in the living room." (Report and Recommendation at 20.) The hearing examiner further cited appellant's testimony that " '[h]alf of the car was inside the apartment,' " " 'there was water leaking from the trunk of the car,' " oil was leaking out, and the fire department " 'sprayed because there was smoke coming out of the engine of the car.' " (Report and Recommendation at 20.)

{¶ 40} As noted by the trial court, while the report and recommendation detailed appellant's explanation for the destruction of the records, the hearing examiner specifically found appellant "not credible in her explanation of the accident and the destruction of the documents." (Report and Recommendation at 28.) To the extent appellant contests the hearing examiner's finding that there were no copies of retrieved documentation, such finding is factually correct, and we find no error by the trial court in rejecting this argument.

{¶ 41} Appellant next challenges the hearing examiner's finding that she was inconsistent in reporting the date of the accident to ODM. Appellant notes that ODM witness Speyer recorded in a memorandum that appellant initially reported the accident occurred in 2015 when, in fact, it occurred in 2013. Appellant argues she mistakenly stated 2015, but was just confused and maintains she did not intentionally misrepresent such fact.

{¶ 42} In response, ODM argues the evidence indicates appellant herself wrote that the ATN documentation was destroyed in 2015. ODM contends this fact is significant

because, if service documentation actually was destroyed in an accident in June 2013, appellant should have been able to provide such documentation subsequent to that date (i.e., from June 2013 through the end of the audit period in June 2014). ODM notes, however, appellant failed to provide any ATN documentation whatsoever, and ODM asserts appellant's failure to submit documentation after the accident casts doubt on whether she maintained it contemporaneously before the accident.

{¶ 43} The record indicates appellant argued before the trial court Speyer "recorded in a memo that Appellant initially reported that the accident occurred in 2015." (Appellant's Trial Brief at 11.) In addressing this contention, the trial court, noting that appellant "suggests the inconsistency came from one of [ODM's] witnesses," pointed to the fact "the record contains a written statement by Appellant that the accident occurred in 2015." (Decision at 8.)

{¶ 44} The record supports the trial court's finding that appellant herself reported the accident occurred in 2015. Specifically, on a DODD form titled "Documentation of Interruption of Service," appellant wrote in the comments section: "I did not include my HPC Transportation Monthly Mileage Sheets because they were destroyed when we had an accident at [R.D.'s] apartment in 2015." (State's Ex. No. 27 at 2.) The trial court also noted appellant's hearing testimony that the documents were destroyed in 2013, and we discern no error by the trial court in failing to find the hearing examiner relied on an improper inference as to this issue.

{¶ 45} Appellant next challenges the hearing examiner's finding as to her testimony that she kept the destroyed service documents in a cabinet in the same spot where the vehicle crashed into the apartment, but that other documentation was kept in a location not damaged by the collision. According to appellant, this factor does nothing to discredit her testimony.

{¶ 46} In addressing this argument, the trial court noted appellant "does not dispute that she testified, as the Hearing Examiner stated, that documents were kept in the exact location where the car struck the apartment, and that the documents remained in a box, yet were ruined by oil." (Decision at 9.) The trial court concluded that "[t]he cited testimony was weighed along with the other evidence in assessing credibility." (Decision at 9.) On review, we agree with the trial court's determination that the hearing examiner's finding

was based on appellant's own direct testimony, and the record indicates the hearing examiner properly considered and weighed this evidence in determining credibility.

{¶ 47} Appellant also contends the hearing examiner erred in finding that "other witnesses, primarily Ms. Crawford, cast doubt on" appellant's claimed version of the facts. (Report and Recommendation at 28.)   According to appellant, the hearing examiner's reliance on doubt expressed by DODD witnesses usurped the role of the factfinder to independently assess appellant's credibility.

{¶ 48} The trial court, in addressing this objection, held that the "quoted statement" from the report and recommendation indicates the hearing examiner was "referring to doubt about the facts stated by Appellant," and that the hearing examiner "expressly assessed Appellant's credibility, and set forth reasons for his determination." (Decision at 9.)   We agree with the trial court that, in context, the "doubt" cited by the hearing examiner was in reference to appellant's version of the events (i.e., appellant's testimony that she kept the destroyed documentation in the exact spot where the vehicle struck the apartment).   On review, the record does not support appellant's claim that the hearing examiner abdicated his responsibility to independently assess or weigh the credibility of appellant.

{¶ 49} As reflected in the above challenges to the administrative findings of fact and conclusions of law, appellant's primary contention on appeal is that the hearing examiner and trial court failed to properly credit her testimony, relying instead on the testimony and evidence presented by ODM.  As set forth under the facts, appellant testified she maintained documentation for services provided from July 2011 to June 2014, but that service records were destroyed when a vehicle crashed into the home of R.D.  Appellant stated she kept the AOC, APC, and ATN service records "underneath the TV cabinet" in R.D.'s living room, at the location where the vehicle struck the residence.  (Tr. at 157.)   According to appellant, those records were stored "in a box, kind of a box."  (Tr. at 169.)

{¶ 50} During cross-examination, in response to an inquiry as to why the box was not depicted in photographs of the accident, appellant stated: "If I knew all this would have happened, I would have pictured the box."  (Tr. at 170.)   When asked how she knew she had "performed all the services," appellant responded: "Because I'm there all the time.  I know I did all that."  (Tr. at 163.)

{¶ 51} Appellant first became aware of the waiver review "[w]hen they sent me the letter." (Tr. at 162.) She knew that documents "were missing." (Tr. at 163.) Appellant acknowledged she recreated the destroyed documentation to comply with DODD's request for documentation and agreed she did not list the destroyed documentation on the insurance policy. When asked how she recreated the documents, appellant testified she did not "know the dates," and that she "had to go through the ISP." (Tr. at 15-16.) Appellant could not remember when she prepared the recreated documents; she did not reference any old records because she "didn't have any." (Tr. at 16.) When asked how far back the records went, appellant responded: "I don't remember." (Tr. at 161.) She testified the accident happened in 2013, but that "I wrote 2015 * * * but when I went back, it was a mistake. It was 2013." (Tr. at 15.)

{¶ 52} Speyer, the auditor assigned to appellant's waiver review, testified he had a phone conversation with appellant (on March 28, 2017) to discuss the preliminary findings of the audit. After Speyer informed her of the results, including monetary findings, appellant then indicated she had to "recreate the documentation because it had been destroyed in an accident." (Tr. at 22.) This was the "first time" Speyer was made aware of "an accident." (Tr. at 22.) Later that day, Speyer requested that appellant provide further information, including "[a] letter from the insurance company regarding the claim, a listing of items that were submitted as a claim, the date of the accident, and the general statement from the provider about the accident." (Tr. at 22.) Appellant subsequently informed Speyer she did not list the missing documentation on the insurance claim, and she also told Speyer the accident occurred in June 2013, "which conflicts with the initial statement." (Tr. at 24.) Upon reviewing the recreated documents, Speyer found inaccuracies, including "dates on the claims pay listings [that] didn't always match the dates on the documentation," as well as "discrepancies on the number of hours on any given day." (Tr. at 44.)

{¶ 53} Crawford, an FCBDD compliance manager, testified she received an e-mail from DODD audit chief Schroeder asking "if our service coordinator knew that the provider's documentation was destroyed in a car accident." (Tr. at 59.) Crawford subsequently e-mailed the service coordinator, Robinson, asking "if she recalled [appellant] telling her that she had been in a car accident that destroyed her provider documentation." (Tr. at 61.) Robinson, who was on medical leave at the time, sent Crawford an e-mail stating

she "did not recall any accident that [appellant] is speaking of," and appellant "also did not report that her documentation was destroyed." (Tr. at 62.) Robinson further stated "the provider did not typically keep the documents in the client's home" but, rather, "kept them in her own home." (Tr. at 63.)

{¶ 54} Schroeder, the audit chief for DODD, testified there was inadequate service support documentation for the claims paid to appellant during the period July 1, 2011 through June 30, 2014 for APC, AOC, and ATN service codes. With respect to the ATN service code, Schroeder noted "we could not perform any testing regarding those claims that were paid" because appellant stated "she did not have the documentation since they were damaged in an accident in 2015." (Tr. at 82.) Schroeder became aware that appellant reported the accident occurred in 2013 after Speyer "was holding the exit conference with her." (Tr. at 88.) Regarding the APC and AOC findings, Schroeder testified DODD could not accept documentation appellant "had previously submitted" as it "did not validate the nature and extent of the services * * * that were provided at the time." (Tr. at 82-83.) With respect to documentation for claims dated after the accident (June 23, 2013), Schroeder testified that "we accepted her documentation, and then we had findings for the discrepancies that existed between the documentation she submitted to us, compared to the claims that she was paid." (Tr. at 83.) According to Schroeder, the information submitted by appellant "did not agree to the number of units that she billed and was ultimately paid for * * * the APC and the AOC service codes." (Tr. at 91.)

{¶ 55} Schroeder denied that DODD disputed the fact there was an accident at R.D.'s apartment. She stated, however, the waiver review committee was "skeptical that the documentation was in the home of the individual at the time that the accident occurred" in light of the service coordinator's statement "she had never seen the provider's documentation within the home of [R.D.]." (Tr. at 98.) According to Schroeder, the service coordinator's e-mails "added to the decision by the waiver review committee," but they were not the controlling factor as "a lot of factors were considered." (Tr. at 101.)

{¶ 56} Schroeder noted appellant submitted documentation "to us never telling us it was recreated," and that it was "provided * * * to the auditor as if it was true and factual documentation." (Tr. at 101.) Not until after "the auditor called" and indicated there would be financial findings "was it brought up that there was an accident where the

documentation was destroyed." (Tr. at 101.) Schroeder further noted appellant initially reported that only transportation (ATN) documentation "was destroyed in an accident in 2015." (Tr. at 103.) Schroeder stated that "all of these items made the * * * committee skeptical about the situation." (Tr. at 102.)

{¶ 57} In reaching the determination that the agency's findings of an overpayment were factually and legally valid, the hearing examiner, upon consideration of the hearing testimony and evidence, found appellant's explanation of the events not credible. Following objections, the director of ODM issued an adjudication order adopting the report and recommendation, noting in part that "the hearing examiner did not find the provider's explanation for the absence of these documents credible" based "in part" on "observance of the witnesses' demeanor," and that such finding "is afforded due deference." (ODM Adjudication Order at 1.) The trial court, upon review of the administrative record, deferred to the hearing examiner's credibility determinations and found reliable, probative, and substantial evidence to support the order of ODM.

{¶ 58} On review, we find no abuse of discretion. The evidence presented during the administrative hearing indicated that appellant, in response to DODD's first request for documentation as part of the waiver review, reported that only her transportation (ATN) records had been destroyed when a vehicle struck the residence of R.D. In submitting documentation for APC and AOC services, appellant did not initially state those records had been destroyed in the accident, nor did she disclose the fact she had recreated the APC and AOC documents to comply with the waiver review request; rather, only after Speyer informed appellant of financial findings did she reveal the documents were not original copies. Based on the record presented, the hearing examiner (and waiver review committee) could have reasonably concluded that omissions by appellant during the audit process undermined her credibility. The evidence also indicated the recreated documentation for the AOC and APC service records contained billing discrepancies and inaccuracies.

{¶ 59} Further, as noted by DODD, while appellant stated that her ATN service records were destroyed in the 2013 accident, appellant produced no ATN service records for the period subsequent to the accident (i.e., from June 2013 until the end of the audit period on June 30, 2014). Again, the hearing examiner could have reasonably viewed the

failure of appellant to produce any ATN records post-accident as casting doubt on whether she kept such records prior to the accident. The hearing examiner also noted an inconsistency in the reporting of the ATN records, i.e., appellant's written representation that they were destroyed in 2015 rather than 2013. While appellant defended this as a mistake, the hearing examiner was free to accept or reject her explanation for the inconsistency. The hearing examiner also cited the lack of corroborating evidence to support appellant's version of the events (i.e., the lack of photographic evidence and the failure to list the documents with the insurance company).

{¶ 60} Appellant maintains the hearing examiner should have credited her testimony as the only reasonable explanation for her inability to produce the service records for the stated period. Under Ohio law, however, "a fact-finder is free to believe all, some or none of a witness's testimony." *Mahajan v. State Med. Bd. of Ohio*, 10th Dist. No. 11AP-421, 2011-Ohio-6728, ¶ 45, citing *D'Souza v. State Med. Bd. of Ohio*, 10th Dist. No. 09AP-97, 2009-Ohio-6901, ¶ 17. While the hearing examiner was free to accept appellant's version of events to explain the lack of documentation, such a finding was not required, and the record, as outlined above, contained evidence upon which the trier of fact could have found appellant's testimony lacked credibility. Here, the trial court declined to substitute its judgment for that of the hearing examiner with respect to the credibility of witnesses, and we find no abuse of discretion by the trial court in its determination that the order of ODM was supported by reliable, probative, and substantial evidence and was in accordance with law.

{¶ 61} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, affirming the order of the director of Ohio Department of Medicaid, is affirmed.

*Judgment affirmed.*

SADLER, P.J., and LUPER SCHUSTER, J., concur.

_____